488 A.2d 571

John ANTANOVICH and Nellie Antanovich,
Co-Administrators of the Estate of Gary
Lee Antanovich, deceased, Appellants,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

Cynthia BRENDLINGER, Individually and as Administratrix of
the Estate of Kenneth Brendlinger, and as natural guardian
of Traci Brendlinger, Jodie Brendlinger and Lonnie Brend-
linger; and Traci Brendlinger, Jodie Brendlinger and Lonnie
Brendlinger, individually, Appellants,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

John ANTANOVICH and Nellie Antanovich,
Co-Administrators of the Estate of Gary
Lee Antanovich, deceased

v.

ALLSTATE INSURANCE COMPANY, Appellee.

Appeal of PENNSYLVANIA TRIAL
LAWYERS ASSOCIATION.

Gerald Alan WILSON, Administrator, C.T.A. of the Estate of
Eleanor D. Wilson, Deceased; and Louis D. Wilson, as surviv-
ing spouse on behalf of himself and on behalf of all other
survivors of Eleanor D. Wilson, deceased, Appellants,

v.

KEYSTONE INSURANCE COMPANY, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 12, 1984.

Decided Feb. 20, 1985.

Anthony J. Seneca, Seneca & O'Dell, Washington, for appellants in No. 17.

Stephen P. McCloskey, Phillips & Faldowski, Washington, for appellee in No. 17.

Robert H. Slone, Mahady and Mahady, Greensburg, for appellants in No. 18.

Michael William Burns, Pittsburgh, for appellee in No. 18.

Richard C. Angino, Angino & Rovner, P.C., Harrisburg, for appellant in No. 19.

Robert H. Slone, for appellee Brendlinger in No. 19.

Michael W. Burns, Pittsburgh, Stephen P. McCloskey, Washington, William T. Barker, Chicago, Ill., for appellee Allstate Ins. Co. in No. 19.

Anthony J. Seneca, Washington, for appellee Antanovich in No. 19.

Richard C. Angino, Angino & Rovner, P.C., Harrisburg, Eli N. Donsky, Donsky, Levin & Dashevsky, P.C., Philadelphia, for appellants and amicus curiae Pennsylvania Trial Lawyers Ass'n in No. 43.

Hugh J. Hutchinson, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, for appellee in No. 43.

Jeffrey A. Less, Bazelon, Less & Price, Philadelphia, for amicus curiae in No. 43.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Before us are three appeals by allowance [1] from orders of Superior Court. In *Antanovich v. Allstate Insurance Company*, 320 Pa.Superior Ct. 322, 467 A.2d 345 (1983), Superior Court *en banc* affirmed the judgment of Washington County Court of Common Pleas denying appellants' claim to stack basic loss benefits payable under Section 202 of the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101–

---

[1]. We note that jurisdiction in this case is predicated on 42 Pa.C.S. § 724. Such appeals are governed by Pa.R.A.P. 1112, not by other appellate rules relating to direct appeals.

1009.701, since repealed.[2] In *Brendlinger v. Allstate Insurance Company*, 320 Pa.Superior Ct. 322, 467 A.2d 345, (1983), Superior Court reversed the judgment of Westmoreland County Common Pleas directing the payment of multiple basic loss benefits and in the third case, *Wilson v. Keystone Insurance Company*, 321 Pa.Superior Ct. 495, 468 A.2d 818 (1983), a panel of Superior Court vacated the judgment of Philadelphia Common Pleas on the basis of the *en banc* disposition of *Antanovich* and *Brendlinger*. All three cases were remanded for recomputation of benefits.

In each of these cases, appellants have claimed amounts in excess of the statutory coverage required by the No-fault Act for work loss based on their purchase of automobile insurance policies and payment of premiums covering the risk of such loss from operation of several automobiles which they or their decedents owned.[3] They argue that the

2. Act of February 12, 1984, P.L. ——, No. 1984–11, *as amended* by Act of February 12, 1984, P.L. ——, No. 1984–12.

3. In *Antanovich v. Allstate,* the parents and administrators of Gary Lee Antanovich sued to recover work loss benefits in the amount of $60,000.00 on the theory that because the no-fault policy issued by Allstate covered four vehicles, the benefits of each coverage should be stacked. The premiums paid by Mr. Antanovich for uninsured motorist coverage and personal injury protection for the period November 21, 1980 to May 21, 1981 amounted to $28.40 on a 1974 Chevrolet, $27.40 on a 1976 Chevrolet, $57.00 on another 1974 Chevrolet and $24.00 on a 1970 Chevrolet. Mr. and Mrs. Antanovich received $15,000.00 from the third party tortfeasor's insurance company and $578.00 every four weeks from Allstate up to a total of $15,000. Appellants had argued below that they were entitled to a lump sum payment for work loss, which issue was decided in their favor below and not raised before us.

In *Brendlinger v. Allstate,* the widow, who is also the executrix, and children of Kenneth Brendlinger brought suit on a no-fault policy issued to him by Allstate. The policy covered a 1977 Dodge and a 1971 Catalina. The premiums paid respectively for uninsured motorist coverage and personal injury protection amounted to $4.40 and $13.00 for each car. Allstate paid Mrs. Brendlinger a lump sum work loss benefit of $13,903.00, $5,000.00 in survivors' benefits and $1,500.00 in funeral expenses.

In *Wilson v. Keystone,* the widower, Louis D. Wilson, and the administrator, Gerald Alan Wilson, sued to recover an additional $35,000.00 in work loss, $579.50 additional in funeral expense and $10,000.00 additional for survivors benefits. Premiums had been paid for statutory and excess coverage on each of two cars.

payment of a basic premium for insurance on one vehicle entitles them to the work loss benefits required by law.[4] From this major premise they ask us to infer that the payment of additional premiums for coverage of the two to four other cars which they, or their decedents, owned entitles them to basic work loss benefits in spite of their insurance contracts' prohibitions against such multiple recovery. In support of this reasoning they refer to one of the introductory legislative "findings" in the No-fault Act's preamble:

(a) Findings.—The General Assembly hereby finds and declares that:

. . . .

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce;

40 P.S. § 1009.102(a).

Appellants claim that this finding states a policy which precludes any contractual prohibition of multiple work loss benefits whenever several cars are insured. The findings in this section of the preamble are, however, prefatory to the "purposes" of the Act. Those purposes are stated in Subsection (b):

(b) Purposes.—Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims.

40 P.S. § 1009.102(b). Reading together the particular finding and the Act's purpose we do not believe they articulate appellants' theory enough to overcome a plain unambiguous

4. We note that the record shows the premium on additional vehicles covered in a single policy is discounted.

contract provision on the ground of policy. We, therefore, affirm the judgment of Superior Court.

Appellants' arguments in support of "stacking" were fully and vigorously presented to the Superior Court *en banc*. In that court Judge (now President Judge) Spaeth, writing for the majority, summarized the opposing arguments:

The Antanovichs and Brendlingers do not argue that the Allstate policy is ambiguous, or that Allstate in some way misled them. *Cf. Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied*, 439 U.S. 1089 [99 S.Ct. 871, 59 L.Ed.2d 55] (1979); *Habecker v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 445 A.2d 1222 (1982); *Adelman v. State Farm Mutual Automobile Insurance Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978); *Barth v. State Farm Fire & Casualty Co.*, 214 Pa.Super. 434, 257 A.2d 671 (1969). Instead, they admit, as they must, that the policy clearly prohibits stacking. They argue, however, that this prohibition should be declared invalid as contrary to the No-fault Act. They acknowledge their inability to point to any provision of the Act explicitly providing that a policy may not prohibit stacking. Moreover, it is evident that the Insurance Commissioner is of the view that a policy that prohibits stacking is not contrary to the Act, for the Commissioner has approved the Allstate policy. *See* 31 Pa.Code § 66.101. However, even though the Commissioner has expert knowledge, to which a court must defer, *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977), he has on occasion issued invalid regulations, *United Services Auto Ass'n Appeal*, 227 Pa.Super. 508, 323 A.2d 737 (1974), and the position of the Antanovichs and Brendlingers is that here he has issued invalid regulations. While no provision of the No-fault Act explicitly provides that a policy may *not* prohibit stacking, neither does any provision explicitly provide that a policy *may* prohibit stacking. This being so, the Antanovichs and Brendlingers argue, we must consider the public policy

underlying the Act. In their view, a proper understanding of that public policy leads to the conclusion that an insurance policy such as Allstate's may not prohibit stacking.

Allstate generally agrees with this definition of the issue, but in its view, a proper understanding of the public policy underlying the No-fault Act leads to the conclusion that stacking *is* prohibited by the Act, and that therefore its insurance policy is valid.

*Antanovich, supra,* 320 Pa.Superior Ct. at 326–27, 467 A.2d at 347–48.

After examining the findings and purposes in Section 102 of the No-fault Act, 40 P.S. § 1009.102, Superior Court proceeded to set forth and analyze the Act's relevant substantive provisions:

The owner of each vehicle registered in Pennsylvania is required to provide security (either by insurance or otherwise) for the payment of basic loss benefits. 40 P.S. § 1009.104. If an accident resulting in injury occurs, the victim or the survivor of a deceased victim "is entitled to receive basic loss benefits in accordance with the provisions of this act." *Id.* § 1009.201(a). The "obligor providing security for the payment of basic loss benefits" is required to pay such benefits "without regard to fault to each individual entitled thereto, pursuant to the terms and conditions of this act." *Id.* § 1009.111(b).

We have already briefly indicated, at the beginning of this part of our opinion, what are the several different items included within "basic loss benefits." To state them more fully, they are as provided in Sections 202 and 103 of the Act:

§ 1009.202 Basic loss benefits

(a) Allowable expense limits.—Allowable expense, as defined in section 103 of this act shall be provided or the equivalent in the form of a contract to provide for services required.

(b) Work loss limits.—Work loss, as defined in section 103 shall be provided:

(1) up to a monthly maximum of:

(A) one thousand dollars ($1,000) multiplied by a fraction whose numerator is the average per capita income in this Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures; or

(B) the disclosed amount, in the case of a named insured who, prior to the accident resulting in injury, voluntarily discloses his actual monthly earnings to his obligor and agrees in writing with such obligor that such sum shall measure work loss; and

(2) up to a total amount of fifteen thousand dollars ($15,000).

(c) Replacement services losses.—Replacement services loss, as defined in section 103 shall be provided up to a daily maximum of twenty-five dollars ($25) for an aggregate period of one year.

(d) Survivors losses.—Survivors loss, as defined in section 103 shall be provided in an amount not to exceed five thousand dollars ($5,000).

40 P.S. § 1009.201(a)–(d).

The term "allowable expense" used in Section 202(a) is defined in Section 103 as follows:

"Allowable expense" means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for:

(A) professional medical treatment and care;

(B) emergency health services;

(C) medical and vocational rehabilitation services;

(D) expenses directly related to the funeral, burial, cremation, or other form of disposition of the remains of a deceased victim, not to exceed one thousand five hundred dollars ($1,500); and

The term does not include that portion of a charge for a room in a hospital, clinic, convalescent, or nursing home, or any other institution engaged in providing

nursing care and related services, in excess of a reasonable and customary charge for semiprivate accommodations, unless more intensive care is medically required; or any amount includable in work loss, replacement services loss, or survivor's loss.

*Id.,* 320 Pa.Superior Ct. at 330–31, 467 A.2d at 349–50.

The court then analyzed the Act's distinction between unlimited recovery under Sections 103 and 202(a) for allowable medical expense and the limited recovery under Section 202(b) for basic work loss saying:

This distinction ... is at least some indication that basic loss benefits should not be stacked. For stacking is a way to avoid a specified limit. But if recovery is unlimited, there is no need to stack. However, there is another feature of Section 202, which clearly manifests an intention that basic loss benefits may not be stacked.

In providing in Section 102(a)(6) that recovery of work loss, replacement services loss, and survivor's loss should be limited to "a reasonable amount," the General Assembly did not say what it meant by "reasonable." In Section 202, it did say: up to $15,000 for work loss, $25 per day for an aggregate period of one year for replacement services loss, and up to $5,000 for survivor's loss. This is simply another way of saying that to permit recovery of *more* than these amounts, which is what would happen if stacking were permitted, would be *"un-*reasonable."

*Id.,* 320 Pa.Superior Ct. at 333, 467 A.2d at 351.

■■■ We have listened with care to the arguments of appellants' counsels but find their policy arguments unpersuasive. Without necessarily approving Superior Court's entire analysis, we hold that the No-fault Act, since repealed, contains no indication of policy clear enough to void a plain, unambiguous provision in an insurance contract which precludes stacking work loss benefits. *See Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Moreover, in the face of such a plain and unambiguous preclusion, appellants

could have had no reasonable expectation of obtaining stacked benefits.[5]

The opinions of Superior Court in *Antanovich, Brendlinger* and *Wilson* are affirmed.

McDERMOTT, J., joins in this opinion and files a concurring opinion.

LARSEN, J., files a dissenting opinion in which ZAPPALA, J., joins.

McDERMOTT, Justice, concurring.

Because of the fundamental differences between the Uninsured Motorist Act[1] and the now defunct No-Fault Act[2], this case is not controlled by *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984).[3] Thus, although I authored the opinion in *Utica Mutual*, I have no hesitation in joining the opinion of the Majority.

LARSEN, Justice, dissenting.

I dissent. This Court has consistently held, in the uninsured motorist area, that multiple coverages under one policy covering more than one vehicle may be cumulated or "stacked" where the insured's damages exceed the limits of uninsured motorist coverage on a single vehicle. *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984); *State Farm Mutual Automobile Insurance Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978); *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). Moreover, we have required the stacking of uninsured motorist coverages despite various express policy provisions purporting to prohibit cumulating

5. *See* this writer's concurring opinion in *Standard Venetian Blind, supra.*

1. Act of August 14, 1963, P.L. 909 § 1 as amended, 40 P.S. § 2000.

2. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.*, since repealed.

3. For a discussion of these differences see *Kirsch v. Nationwide Insurance Co.*, 532 F.Supp. 766, 768 (W.D.Pa.1982).

of such benefits, on the grounds that such provisions in an insurance contract are against public policy as gleaned both from the purposes and goals of the Uninsured Motorist Act [1] and from the principle that the intended beneficiary of an insurance policy is entitled to multiple coverages when multiple premiums have been paid. *Utica Mutual Insurance Co. v. Contrisciane, supra* at 504 Pa. 338, 473 A.2d 1010.

Because I perceive no legitimate distinction between the Uninsured Motorist Act and the Pennsylvania No-Fault Motor Vehicle Insurance Act [2] for the purposes of stacking uninsured motorists coverage and no-fault benefits, respectively, I would declare the insurance policy provisions of the Allstate and Keystone Insurance Companies purporting to prohibit the stacking of no-fault benefits to be void as against public policy. By allowing insurance carriers to collect additional premiums for no-fault benefits which will never be paid to the insured who has chosen to insure more than one vehicle under a single policy, the majority has frustrated the purposes of the No-fault Act and has violated a cardinal principle of the jurisprudence of insurance law, namely that an insured should get what he or she has paid for.

The No-fault Act required that every owner of a motor vehicle owned or operated in this Commonwealth must provide "security" covering each such motor vehicle. 40 P.S. § 1009.104(a). Security was required to be provided on each vehicle for basic loss benefits as set forth in 40 P.S. § 1009.202, and for the payment of up to $30,000 per accident/$15,000 per person for bodily injury or death to another person and up to $5,000 per accident for property damage. 40 P.S. § 1009.104(a). Under the scheme created by the No-fault Act, an "insured" would be entitled to no-fault basic loss benefits if he or she was a "victim" involved in a motor vehicle accident, regardless of whether

---

1. Act of August 14, 1963, P.L. 909 § 1, as amended, 40 P.S. § 2000.
2. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101–1009.701 (supp. 1984–85), since repealed.

the accident occurred while the insured was operating his or her own insured vehicle. *See* 40 P.S. §§ 1009.201(a), 1009.-204, 1009.103. In accordance with section 104(a), appellants (or their decedents) purchased insurance to provide the required security on each of their vehicles, which included coverage for basic loss benefits.[3] The respective insurance companies provided appellants (or their decedents) with insurance policies drafted as single documents, but charged separate premiums for basic loss benefits coverage provided on each vehicle.[4] Despite the fact that the insurance companies collected separate premiums for basic loss benefits coverage provided for each vehicle, each policy contained express provisions attempting to prohibit the stacking of such coverages.[5]

**3.** As set forth more fully in the majority opinion, at 574–575, "basic loss benefits" include "allowable expense" items (as defined in 40 P.S. § 1009.103), work loss up to a "total amount" of $15,000, replacement services losses for one year up to $25 per day, and survivors losses not to exceed $5,000.

**4.** Both the Allstate and the Keystone policies use the terminology "personal injury protection" to cover "basic loss benefits" required by the No-fault Act. *See* Brief and Reproduced Record for Appellants Wilson Estate and Amicus Curiae Pennsylvania Trial Lawyers Association (hereinafter Wilson Reproduced Record) at No. 43 E.D. Appeal Docket 1984, at 5, *and* Consolidated Brief and Supplemental Reproduced Record for Appellee Allstate Insurance Co. (hereinafter Allstate Reproduced Record) at Nos. 17, 18 and 19 W.D. Appeal Docket 1984, at Appendix A, 1b.

**5.** The Allstate policies contained the following provision:
**LIMITS OF LIABILITY**
Regardless of the number of persons insured, policies or plans of self-insurance applicable, claims made or INSURED MOTOR VEHICLES to which this coverage applies, Allstate's liability for personal injury protection benefits with respect to BODILY INJURY to any one ELIGIBLE PERSON in any one MOTOR VEHICLE accident is limited as follows:
(1) the maximum amount payable for WORK LOSS shall not exceed $15,000, limited to a monthly maximum of
  (a) $1,000 multiplied by the average per capita income in Pennsylvania divided by the average per capita income in the United States shown in the latest available U.S. Department of Commerce figures; or
  (b) actual monthly earnings if the NAMED INSURED voluntarily agrees in writing with Allstate prior to the accident involving INJURY, that such earnings shall measure the maximum amount of WORK LOSS payable to the NAMED INSURED by Allstate;

In *Utica Mutual Insurance Co. v. Contriscane, supra,* this Court considered the "very troublesome issues of cumulating benefits under multiple coverages, otherwise known as 'stacking' ", and stated:

The seminal case in Pennsylvania on the issue of stacking is *Harleysville Mutual Casualty Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968). In that case we voided an "other insurance" clause, and held that "where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss." *Id.* 429 Pa. at 395, 241 A.2d at 115. Subsequently, in *State Farm Mutual Auto Insurance Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978), we held that a policy clause which purported to exclude the cumulation of coverage by a named insured was in derogation of the Uninsured Motorist Act.

In *Sones v. Aetna Casualty & Surety Co.,* 270 Pa.Super. 330, 411 A.2d 552 (1979) the Superior Court held that the holding in *Williams* was applicable to liability limitation clauses as well as to exclusionary clauses. We agree. The clear import of *Harleysville, supra,* and *Williams, supra,* is that *any attempt by the insurer to diminish the statutorily mandated floor of minimum protection provided by the Uninsured Motorist Act, will be considered void as being repugnant to, and in derogation of, the purpose of that act. That "floor" has been held to apply to each insured vehicle. See*

(2) the maximum amount payable for REPLACEMENT SERVICES LOSS is $25 daily for an aggregate period of one year;
(3) the maximum amount payable for FUNERAL EXPENSES shall not exceed $1,500;
(4) the maximum amount payable for SURVIVOR'S LOSS shall not exceed $5,000.
Allstate Reproduced Record at 5b–6b.
The Keystone policy contained almost identical language, except that added personal injury protection benefits for work loss and survivor's loss had been purchased, increasing the "maximum amount payable for work loss" to $35,000 with a monthly maximum of $1,500, and increasing the "maximum amount payable for survivor's loss" to $10,000. Wilson Reproduced Record at 5.

*Williams, supra. Thus, in the context of the present case we find no merit in the reliance by Utica and/or Aetna on the provisions in their policies purporting to limit liability.*

504 Pa. at 337, 473 A.2d at 1010 (emphasis added). (The provisions in those policies purporting to limit liability by prohibiting stacking of multi-vehicle uninsured motorist coverage were substantially similar to the provisions involved in the instant appeal prohibiting stacking of multi-vehicle no-fault or basic loss benefits.[6]) This Court then set forth the rationale for voiding those anti-stacking provisions and for permitting stacking of multiple coverages, stating:

The basis upon which our Court has justified stacking is twofold: *first, that it furthers the policies sought to be accomplished by the [Uninsured Motorist Act];* and second, that *the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid. See Harleysville v. Blumling, supra.* The latter rationale is grounded in the belief that *a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and therefore is entitled to benefits under each.*

**6.** *Compare* the provisions set forth in note 5, *supra, with* the provisions of the Aetna insurance policy in the *Utica* case, Appellant Utica's Reproduced Record at 99a, which provided:

**Limits of Liability**

Regardless of the number of (1) persons or organizations who are Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) automobiles or trailers to which this policy applies,

(a) The limit of liability for Uninsured Motorists Coverage stated in the declarations as applicable to "each person" [$15,000] is the limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provisions respecting each person, the limit of liability stated in the declarations as applicable to "each accident" [$30,000] is the total limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

504 Pa. at 338, 473 A.2d at 1010 (emphasis added).[7]

I find the *Utica* twofold rationale equally compelling in the context of the stacking of no-fault basic loss benefits. The Superior Court rejected the analogy between the Uninsured Motorist Act (and cases thereunder permitting stacking) and the No-fault Act, stating at 320 Pa.Superior Ct. 339–340, 467 A.2d 354–55:

> The Uninsured Motorist Act was enacted specifically to provide coverage to innocent victims of negligent acts of uninsured third parties. The Act was not intended to limit causes of action against tortfeasors, but to assure recovery where tortfeasors are financially unable to pay any judgment awarded. The Act does not place any statutory maximum on the amount of coverage any individual can obtain, only the minimum amount of coverage each insurance policy must provide.

> The No-Fault Act, on the other hand, has an entirely different purpose. The No-Fault Act provides for a specific amount of possible recovery to be awarded to victims of motor vehicle accidents, *regardless of fault*. This arrangement allows for prompt compensation to victims. However, once the *statutory ceilings* are exceeded, the negligent party is still liable for any further damages caused by his actions. The cause of action against the faulty driver is not limited at this point. Furthermore, the very fact that, *unlike the Uninsured Motorist Act, the No-Fault Act does contain statutory ceilings* in the

7. The majority of this Court then applied this analysis to conclude that, since the decedent Contrisciane was an intended "class one" beneficiary of the Aetna family policy, but was an incidental "class two" beneficiary of his employer's fleet policy through Utica, stacking was permitted under the Aetna policy but not under the Utica policy. 504 Pa. at 337–341, 473 A.2d at 1010–12. This author filed a dissenting opinion in *Utica* on the grounds that the appellee should have been permitted to stack coverages under *both* the Aetna and Utica policies as the decedent Contrisciane was an intended beneficiary under both policies. 504 Pa. at 341–345, 473 A.2d at 1012–14.

In the three cases consolidated for this appeal, there is no question that each victim was a "class one" insured of a family insurance policy, as that classification is defined by *Utica*, 504 Pa. at 339–341, 473 A.2d at 1011–12, and the No-fault Act, 40 P.S. § 1009.103 "Insured".

amount of recovery indicates an intent to limit the amount of no-fault recovery under the statute. (emphasis added).

This conclusion that the No-Fault Act contains statutory *ceilings* on no-fault or basic loss benefits recovery is in my opinion, erroneous for two reasons. First, the Superior Court draws an improper inference from the legislative Findings and Purposes. 40 P.S. § 1009.102. That court acknowledged the Finding stressed by appellants, that "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents ... is essential to the humane and purposeful functioning of commerce," 40 P.S. § 1009.102(a)(3), but was not convinced that this Finding mandated stacking of no-fault benefits in order to achieve "maximum feasible restoration ... and compensation...." In its view, that Finding was outweighed by *other* Findings expressing the need for "a statewide, *low-cost,* comprehensive *and fair* system" of compensation and restoration of motor vehicle accident victims and their survivors, 40 P.S. § 1009.102(a)(4), (a)(6) and (a)(9), and by the declared "policy of the General Assembly to establish at *reasonable cost* to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of motor vehicle accident victims." 40 P.S. § 1009.102(b). In my view, the legislative Findings and Purposes are neutral as regards stacking and I am unpersuaded by the Superior Court's reasoning to the contrary. This is so because, while allowing stacking of basic loss benefits might increase the "low-cost" of the system, on the one hand, prohibiting stacking would reduce the "maximum feasible restoration of all individuals injured and compensation of ... economic losses" on the other hand.

And I cannot agree with the Superior Court that to permit stacking would render the system "unfair" because the owner and insurer of more than one vehicle would receive cumulative basic loss benefits while the owner and

insurer of only one vehicle would recover only one unit of basic loss benefits, a result that court designates "invidious discrimination." 320 Pa.Superior Ct. 334, 467 A.2d 351. There is obviously no discrimination, invidious or otherwise, in allowing a person who had paid additional premiums to collect additional benefits, and the No-fault Act itself recognizes this in providing that a person may purchase added basic loss benefits. 40 P.S. § 1009.207. We need a more explicit demonstration of intent than that contained in the legislative Findings and Declaration of Purpose to permit the interpretation that the No-Fault Act establishes a ceiling on maximum no-fault benefits and prohibits stacking.

Secondly, the Superior Court erroneously supports its conclusion by studying the interplay between several substantive provisions of the No-fault Act, stating:

> Thus the General Assembly made plain its intention that with respect to *some* items of loss ("basic medical and rehabilitation costs") a limit on recovery should *not* be imposed ("Payment of all" such losses should be assured), but that with respect to *other* items of loss ("work loss, replacement services and survivor's loss") limits on recovery *should* be imposed ("recovery of a reasonable amount"). This intention is implemented by Sections 202 and 103: in providing basic loss benefits, no limits are imposed in recovery of basic medical and rehabilitative costs, but limits are imposed on recovery of work loss, replacement services and survivor's loss.

> \*　　\*　　\*　　\*　　\*　　\*

> In providing in Section 102(a)(6) that recovery of work loss, replacement services loss, and survivor's loss should be limited to "a reasonable amount," the General Assembly did not say what it meant by "reasonable." In Section 202, it did say: up to $15,000 for work loss, $25 per day for an aggregate period of one year for replacement services loss, and up to $5,000 for survivor's loss. *This is simply another way of saying that to permit recovery for more than these amounts, which is what*

*would happen if stacking were permitted, would be "unreasonable."* (emphasis added).

This interpretation is unsound. These provisions may indeed establish the "reasonable" amounts of coverage where only the mandatory no-fault basic loss coverage is purchased—but they do not establish an *absolute* ceiling on the amount of basic loss benefits coverage that may be purchased. Section 207, 40 P.S. § 1009.207, explicitly required insurance carriers to "offer or obligate themselves to provide added loss benefits ... including: (1) loss excluded from basic loss benefits by limits on allowable expense, work loss, replacement services loss, and survivor's loss...." 40 P.S. § 1009.207(a)(1). I would hold that, in charging additional premiums for each vehicle when a single premium for basic loss benefits on one vehicle would have sufficed to provide the "reasonable" limits on basic loss benefits set forth in section 202, the insurance companies have "obligated" themselves to provide added loss benefits by stacking the coverages that have been paid for.

Another indication that the legislature did not intend to place a ceiling on the total amount of basic loss benefits recoverable is contained in section 111(a), 40 P.S. § 1009.-111(a), which provides in relevant portion:

> (2) Whenever an individual who receives or is entitled to receive no-fault benefits for an injury has a claim or cause of action against any other person causing the injury as based upon a determination of fault, the obligor is subrogated to the rights of the claimant only for:

> (A) elements of damage compensated for by security for the payment of no-fault benefits in excess of the *minimum basic loss benefits* required under this act are recoverable; and

> (B) the obligor has paid or become obligated to pay accrued or future no-fault benefits in excess of the *minimum basic loss benefits* required under this act.

Under this provision and section 207, it is clear that an insured may pay additional premiums for additional basic loss benefits protection. Where the obligor has made pay-

ments to the insured in excess of the *minimum basic loss benefits* established by section 202, the obligor may become subrogated to the rights of the insured to sue a third party in tort for the excess. Thus there is a *ceiling* on the payments to be made by the insurance carrier without subrogation rights that would otherwise enable the carrier to recover those payments from the tortfeasor; over that *ceiling*, ("minimum basic loss benefits"), the carrier's subrogation rights to sue in tort, based upon a determination of fault, are revived. *As to the insured,* however, section 202 is more properly viewed as establishing a *floor* of *minimum basic loss benefits protection.*

Reasonable persons may frequently differ in their interpretation of legislation and, when interpreting the No-fault Act, they usually will, as evidenced by the divergence of opinion on the stacking issue in the courts of common pleas. *See Antanovich v. Allstate Insurance Co.,* 320 Pa.Super. at 324, n. 1, 467 A.2d at 346, n. 1. However, we have held the No-Fault Act to be remedial legislation which requires that, if error is to be made in doubtful cases where the meaning of an insurance policy provision or the legislative intent is unclear, the error is to be in favor of coverage. *Motley v. State Farm Mutual Insurance Co.,* 502 Pa. 335, 340, 466 A.2d 609 (1983); *Tubner v. State Farm Mutual Insurance Co.,* 496 Pa. 215, 218, 436 A.2d 621 (1981); *Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 455, 421 A.2d 629 (1980). Given that principle, I believe the more reasonable interpretation of the No-fault Act is that it does not prohibit stacking of no-fault benefits.

As the No-Fault Act does not prohibit stacking of basic loss benefits, it is clear that the provisions of the insurance policies herein purporting to prohibit stacking, while the carriers charge multiple premiums for illusory no-fault benefits on multiple vehicles, should be declared invalid. As previously set forth, the holding of *Utica* was predicated not only upon the policies and goals of the Uninsured Motorists Act, but also upon "the belief that a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and

therefore is entitled to benefits under each." *Utica Mutual Insurance Co. v. Contrisciane, supra* at 504 Pa. 338, 473 A.2d 1010. Thus, the explicit provisions in the policies therein purporting to limit the insurance companies' liability for uninsured motorist coverage were not permitted to defeat those reasonable expectations of the insured.

*Utica* thus perpetuates the long standing principle that insurance contracts are unlike most other contracts, and that the usual principles of contract law and interpretation may not be applicable. *See, e.g., Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 76 n. 8, 371 A.2d 193, 198 n. 8 (1977); *Johnson v. Concord Mutual Insurance Co.*, 450 Pa. 614, 300 A.2d 61 (1973). As the Superior Court stated in *Sands v. Granite Mutual Insurance Co.*, 232 Pa.Super. 70, 331 A.2d 711, 717 (1974):

Courts frequently rely upon public policy in overriding explicit terms in the insurance contract, at least when the contract terms would operate to defeat the reasonable expectations of the insured, because insurance carriers are affected with a public interest and are in a better position to more equitably divide the risk of personal tragedy, insofar as such tragedy can be expressed in dollars and cents. See R. Keeton, Insurance Law 22 § 341–42 (1971). [also citing *Johnson v. Concord Mutual Insurance Co., supra*]

The nature of the typical non-commercial insurance policy also requires courts to critically view provisions purporting to limit liability. As Chief Justice Nix observed in *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 321, 469 A.2d 563 (1983) (dissenting opinion), an "insurance contract is essentially a contract of adhesion. Its terms are not bargained for but rather dictated by the insurer." In *Standard Venetian Blind*, this Court noted that:

in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance. See 13 Pa.C.S. § 2302 (court may refuse to enforce contract

or any clause of contract if court as a matter of law deems the contract or any clause of the contract to have been "unconscionable at the time it was made").

503 Pa. at 307, 469 A.2d at 567. It is difficult to imagine a more unconscionable contract than one which allows an insurance company to charge a premium for which it will never have to provide any benefits. Since purchase of basic loss benefits coverage on a single motor vehicle suffices to provide the insured with the basic loss benefits set forth in section 202 whether or not that vehicle is involved in the accident, it is unconscionable to allow insurance companies to charge additional basic loss benefits premiums on additional vehicles while refusing to provide additional coverage.

For the foregoing reasons, I would reverse the orders of the Superior Court in *Antanovich v. Allstate Insurance Co.*, 320 Pa.Super. 322, 467 A.2d 345 (1983) and *Wilson v. Keystone Insurance Co.*, 321 Pa.Super. 495, 468 A.2d 818 (1983), and would remand to the respective courts of common pleas for proceedings consistent with this opinion.

ZAPPALA, J., joins in this Dissenting Opinion.