531 A.2d 487

**Linda KOVAL, Administratrix of the Estate of Joseph Koval, Deceased and Linda Koval, in her own right, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued April 28, 1987.

Filed Sept. 14, 1987.

416

Arthur Cutruzzula, Pittsburgh, for appellant.

Mary Ann Czajkowski, Connellsville, for appellee.

Before CIRILLO, President Judge, and MONTEMURO and TAMILIA, JJ.

MONTEMURO, Judge:

Appellant Linda Koval, as administratrix of her husband's estate and in her own right, challenges a grant of summary judgment in favor of appellee Liberty Mutual

Insurance Company. We affirm the order of the Allegheny County Court of Common Pleas.

Ms. Koval seeks to "stack" the "personal injury protection" coverage on six vehicles that her husband, Joseph Koval, had insured pursuant to the now-defunct Pennsylvania No-Fault Motor Vehicle Insurance Act.[1] Mr. Koval owned an automobile repair shop and used the six vehicles for business purposes. In early 1981, he obtained from Liberty Mutual a comprehensive "Garage Policy" of insurance to cover the numerous risks of his repair shop operation. This 28–page policy contained basic liability, No-fault, uninsured motorist and various types of "garage keepers" and "physical damage" insurance. Among the several documents that comprised the policy was a six-page "Personal Injury Protection Endorsement (Pennsylvania)." Page one of this document contained, in part, the following:

In accordance with Pennsylvania No-Fault Motor Vehicle Insurance Act, [Liberty Mutual] will pay any or all personal injury protection benefits for:

(a) medical expenses,

(b) work loss,

(c) replacement services loss,

(d) funeral expenses and

(e) survivor's loss.

Affidavit of Linda Koval, exhibit "c," at 32. Pages three and four contained the following, under the heading "Limits of Liability":

Regardless of the number of ... insured motor vehicles to which this coverage applies, [Liberty Mutual's] liability for personal injury protection benefits with respect to bodily injury to any one eligible person in any one motor vehicle accident is limited as follows:

(1) The maximum amount payable for work loss shall not exceed $15,000 ...;

(2) ...;

---

1. No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 *et seq., repealed by* Act of Feb. 12, 1984, P.L. 26, No. 11, § 8(a), eff. Oct. 1, 1984.

(3) the maximum amount payable for funeral expenses shall not exceed $1,500;

(4) the maximum amount payable for survivor's loss shall not exceed $5,000.

*Id.* at 34–35. The parties appear to agree that the purpose of this language was to prohibit a claimant from cumulating or "stacking" in a single claim for a single injury the No-fault benefits available on each of the six covered vehicles.

On December 23, 1981, during the coverage period of the Garage Policy, Joseph Koval died in a one-car automobile accident. Because Mr. Koval was driving one of the six covered vehicles, Liberty Mutual paid to Linda Koval No-fault "personal injury protection benefits" in the amounts of $15,000 for work loss, $1,500 for funeral expenses and $5,000 for survivor's loss. These figures represent the maximum amount of per-vehicle No-fault coverage available under the policy. Ms. Koval nevertheless filed this action to recover additional benefits through the No-fault coverages on the five remaining vehicles.[2] Citing the "Limits of Liability" provision in the policy, the trial court granted Liberty Mutual's motion for summary judgment and dismissed Ms. Koval's complaint. This timely appeal followed.

On appeal, Ms. Koval does not dispute that the policy issued to her husband by Liberty Mutual contained a prohibition against "stacking" of No-fault benefits. Nor does she challenge the validity of "anti-stacking" provisions in general under the No-fault Act. Ms. Koval instead argues that the prohibition was neither plainly worded nor "conspicuously displayed" and that it therefore would not have defeated an insured's "reasonable expectation of obtaining stacked benefits." She also argues that the prohibition is

**2.** Ms. Koval seeks an additional $75,000 in work loss and $25,000 in survivor's loss benefits. These amounts equal five times the maximum amount of "personal injury protection benefits" coverage available on each of the five remaining vehicles. Ms. Koval also seeks an additional $1,547.42 in funeral expenses, which represents the difference between the $3,047.42 in expenses actually incurred for Joseph Koval's funeral and the $1,500 paid by Liberty Mutual.

unconscionable and therefore void because Liberty Mutual "buried" the fine print "Limits of Liability" provision in a thicket of confusing insurance documents. We will consider each of these two arguments in turn.[3]

The parties agree that the starting point in the analysis of this case is the decision of our supreme court in *Antanovich v. Allstate Ins. Co.*, 507 Pa. 68, 488 A.2d 571 (1985). The "anti-stacking" clause at issue in *Antanovich* is identical to the "Limits of Liability" provision presently before us. *See, Antanovich v. Allstate Ins. Co.*, 320 Pa.Super. 322, 325–26, 467 A.2d 345, 347 (1983). The appellants in *Antanovich*, however, claimed not that the "anti-stacking" language was ambiguous or inconspicuous but that prohibitions against stacking in general undermine the policy of the No-fault Act. Our supreme court rejected this attempt to void all "anti-stacking" clauses in all No-fault policies. The court instead looked to the terms of the policy in question to determine the fairness and clarity of the bargain:

> [W]e hold that the No-Fault Act, since repealed, contains no indication of policy clear enough to void a plain, unambiguous provision in an insurance contract which precludes stacking work loss benefits. · *See Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983). Moreover, in the face of such a plain and unambiguous preclusion, appellants could have had no reasonable expectation of obtaining stacked benefits.

*Antanovich, supra* 507 Pa. at 76–77, 488 A.2d at 575. The *Antanovich* court thus reaffirmed the principle that the written contract of insurance "is the true test of the parties'

---

**3.** Ms. Koval lists three issues in the "Statement of Questions Involved" portion of her brief. The "Argument" portion, however, contains only two parts. This failure to correlate the argument with the questions involved transgresses Pa.R.A.P. 2119(a). Although we will overlook the transgression in the interests of justice and judicial economy, we note that Ms. Koval has presented two arguments in her ·brief, not three. We note also that Liberty Mutual's brief violates Pa.R.A.P. 124(a)(4). Litigants should not ignore the rules established for appellate practice by our supreme court.

intention." *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 307, 469 A.2d 563, 567 (1983). This principal, as our supreme court recognized in *Standard Venetian Blind,* avoids uncertain results, expedites the resolution of coverage disputes and reduces the costs of obtaining insurance. A limitation on coverage therefore will bind an insured as long as the limitation is "clearly worded and conspicuously displayed," regardless of whether the insured actually read or understood it. *Id.,* 503 Pa. at 307, 469 A.2d at 567. The court upheld the "anti-stacking" clause at issue in *Antanovich* because the language was so clear and so conspicuous that the insured could harbor "no reasonable expectation of obtaining stacked benefits."

Because the language before the court in *Antanovich* is identical to the language before us today, Ms. Koval cannot and does not challenge the internal clarity of the Liberty Mutual's "anti-stacking" clause. Instead, she contends that the clause, when read in the context of the whole policy, was too inconspicuous to preclude recovery of stacked benefits. Her argument challenges the structural rather than the semantic ambiguity of the Garage Policy. We certainly agree that we must construe a contract of insurance as a whole and not in discrete units. *See Musisko v. Equitable Life Insurance Co.,* 344 Pa.Super. 101, 496 A.2d 28 (1985); *United Fidelity and Guaranty v. Griggs,* 341 Pa.Super. 286, 491 A.2d 267 (1985); *Huffman v. Aetna Life and Cas. Co.,* 337 Pa.Super. 274, 486 A.2d 1330 (1984). We disagree, however, that the Garage Policy as a whole obscures the otherwise clear language here at issue.

Ms. Koval points out that the Garage Policy was one of several "lengthy and complex" insurance policies issued to Joseph Koval by Liberty Mutual in early 1981. Liberty Mutual packaged these policies, which included Worker's Compensation and Inland Marine insurance, together in a single ring-binder. Although the package as a whole presents more than an evening's light reading, a reasonable inquiry would enable the average layperson to comprehend

the extent of the various coverages. The Garage Policy appears in a discrete and clearly-labeled section of the ring-binder. The "Declarations" portion of the policy contains a single-page, tabular summary of the types of coverage and the limits of Liberty Mutual's liability on each type. Rather than state a numerical limit on No-fault coverage, the table refers the reader to the "Personal Injury Protection Endorsement."[1] As we have indicated, the specific per-vehicle limits on No-fault coverage appear in the "anti-stacking" clause on pages three and four of the endorsement, under the boldfaced caption "Limits of Liability." We find no undue complexity in the structure of the Garage Policy. Mr. Koval owned a business that required him to obtain many varieties of risk protection. Liberty Mutual was and is a large company that could offer Mr. Koval the full panoply of protection needed in the risky environment of modern commerce. Any agreement between a business and a party willing to cover the risks of that business necessarily rests on an intricate infrastructure of words, which the parties hope will define the precise boundaries of the risk coverage. The documents that evidence this kind of agreement are thus lengthy and complex. They need not, however, exceed the grasp of the ordinary layperson. Length alone will not render incomprehensible an otherwise clearly-worded and clearly-organized insurance contract. We agree with the trial court in this case that the Garage Policy was both clearly-worded and clearly-organized. Ms. Koval cannot escape the plain meaning of the "anti-stacking" clause merely because the necessary length and com-

---

4. Ms. Koval does not question whether the "Personal Injury Protection Endorsement" was part of the insurance contract between her husband and Liberty Mutual. We have held that an endorsement is part of the underlying contract if the parties appear to have so intended and if applicable statutes or regulations allow modification of insurance contracts by endorsement. *See Young v. United States Fidelity & Guaranty Co.*, 299 Pa.Super. 237, 445 A.2d 542 (1982). In the present case, the Garage Policy plainly permitted modification "by endorsement issued by [Liberty Mutual]." Affidavit of Linda Koval, exhibit "c" at 21. The Insurance Commissioner, moreover, has sanctioned modification by endorsement and has expressly approved of the "Personal Injury Protection Endorsement" form used by Liberty Mutual. *See* 31 Pa. Code § 66.102(a) and (e).

plexity of the policy might have discouraged her husband from reading its provisions. We would not read *Antanovich v. Allstate Ins. Co.* and *Standard Venetian Blind Co. v. American Empire Ins. Co.* so narrowly.[5]

On the other hand, our supreme court recognized in *Tonkovic v. State Farm Mut. Automobile Ins. Co.*, 513 Pa. 445, 521 A.2d 920 (1987), that even the clearest-written policy exclusion will not bind the insured if the insured applied for a specific type of coverage or benefit and the insurer issued a policy materially different from the requested type. An insurer cannot unilaterally defeat the expressed expectations of the insured. When the issued coverage differs materially from the coverage for which the insured specifically applied, the insurer must call the difference to the attention of the insured, regardless of whether the policy language by itself is clear. In *Tonkovic*, the insured had applied and paid for a policy that would provide disability coverage even if he was eligible for worker's compensation benefits. The insurer nevertheless issued a policy with a worker's compensation exclusion on disability coverage. At trial, the insured established that the insurer neither furnished the insured with a copy of the policy nor notified the insured of the discrepancy. Our supreme court found "a crucial distinction" between these circumstances and "cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." *Tonkovic, supra*, 513 Pa. at 454, 521 A.2d at 925. *See also Banker v. Valley Fargo Ins. Co.*, 363 Pa.Super. 456, 526 A.2d 434 (1987). In the present case, Liberty Mutual did not bear the responsibility for assuring that Joseph Koval understood the prohibition against stacking. Ms. Koval nowhere contends that her husband applied or

---

5. In a letter to Mr. Koval on a matter unrelated to No-fault coverage, an agent for Liberty Mutual had indicated that Garage Policies were "one of the hardest coverages to interpret" and that Mr. Koval could telephone the agent with any questions about coverage. Ms. Koval appears to believe that the agent's characterization of garage policies as difficult to interpret somehow contributed to the "ambiguity" of the policy. We fail to see the connection.

paid for a policy under which he could stack No-fault coverage. Liberty Mutual's "anti-stacking" clause, moreover, was faithfully reproduced from the standard No-fault endorsement form promulgated by the Insurance Commissioner for use in Pennyslvania policies. *See* 31 Pa. Code § 66.102(e). Thus, Liberty Mutual has not attempted to saddle its insured with anything more than the "usual incidents" of the coverage that the insured requested. If Mr. Koval read his policy, he could have entertained "no reasonable expectation of obtaining stacked benefits." If he failed to read his policy, his ignorance will not void the clear language of the "anti-stacking" clause.

■ The trial court correctly determined the ambiguity issue without the aid of a jury. Generally, interpretation of unambiguous writings falls within the province of the court, while interpretation of ambiguous writings is a matter for the jury. *See Hutchinson v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986); *Standard Venetian Blind Co. v. American Empire Ins. Co., supra; Community College of Beaver Cty. v. Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977). Given this allocation of tasks, the threshold determination of whether a writing is ambiguous necessarily lies with the court. *See Hutchinson v. Sunbeam Coal Corp., supra; Vogel v. Berkley*, 354 Pa.Super. 291, 511 A.2d 878 (1986).

■ Ms. Koval also argues that the "anti-stacking" clause is "unconscionable." We bear in mind the observation of our supreme court in *Standard Venetian Blind, supra* 503 Pa. at 307, 469 A.2d 567, that "in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance." The supreme court, however, has "refused to hold contracts unconscionable simply because of a disparity in bargaining power." *Witmer v. Exxon Corp.*, 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981). The test of "unconscionability" is two-fold. First, one of the parties to the contract must have lacked a "meaningful choice" about

whether to accept the provision in question. Second, the challenged provision must "unreasonably favor" the other party to the contract. *See Witmer v. Exxon Corp., supra; Germantown Manufacturing Co. v. Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138 (1985); *Bishop v. Washington,* 331 Pa.Super. 387, 480 A.2d 1088 (1984). Thus, even if we assume that Joseph Koval lacked any "meaningful choice" in his dealings with Liberty Mutual on the question of "stacking" No-fault coverages,[6] we must nevertheless determine whether the "anti-stacking" clause "unreasonably favors" Liberty Mutual. *See Bishop v. Washington, supra.* We find that it does not.

In support of her "unconscionability" argument, Ms. Koval simply rehashes the same points that she offered under her "ambiguity" argument. We have already determined that the "anti-stacking" clause was semantically and structurally clear. We find, moreover, that the clause reasonably allocated the risks of loss between the parties. Liberty Mutual insured Mr. Koval against the personal injury risks attendant to having six motor vehicles on the road. The personal injury protection coverage on each of the six vehicles corresponded to the amounts of coverage prescribed by Section 202 of the now-repealed No-fault Act, 40 P.S. § 1009.202. Nothing in the record suggests that Mr. Koval ever sought or paid for "added benefits" pursuant to Section 207(a)(1) of the Act, 40 P.S. § 1009.207(a)(1). Liberty Mutual therefore acted reasonably and fairly when it refused to extend its risk coverage by exposing itself to full, six-vehicle liability on a single-vehicle claim. We believe that the regulations of the Insurance Department further support the reasonableness and fairness of the "anti-stacking" clause. As we have indicated, the Commissioner has expressly approved of the language used by Liberty Mutual in the Garage Policy endorsement.

6. This court has recognized that insurance contracts are typically contracts of "adhesion." *See Bishop v. Washington, supra. See also Germantown Manufacturing Co. v. Rawlinson, supra* (confession of judgment clause).

■ We note that the determination of whether a contract or a clause is "unconscionable" is a question of law for the court. *See Bishop v. Washington, supra;* Restatement (Second) of Contracts § 208, comment f (1981). Thus, on a motion for summary judgment, "a court may conclude, as a matter of law, that a contract or clause is enforceable regardless of an allegation of unconscionability, as long as there is no genuine issue of material fact." *Bishop, supra,* 331 Pa.Superior Ct. at 399, 480 A.2d at 1094. As it did with the "ambiguity" argument, the trial court in the present case properly disposed of the "unconscionability" argument without the aid of a jury.

For the foregoing reasons, we affirm the order entering summary judgment in favor of appellee Liberty Mutual Insurance Company and against appellant Linda Koval.

Order affirmed.