Dennis J. STEBOK, Plaintiff,

v.

AMERICAN GENERAL LIFE AND AC-
CIDENT INSURANCE COMPANY,
a/k/a American General Insurance
Company, a corporation, Defendant.

Civ. A. No. 87–2317.

United States District Court,
W.D. Pennsylvania.

April 13, 1989.

Cynthia Cline, Uniontown, Pa., for plaintiff.

Craig Jones, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Plaintiff Dennis J. Stebok brought this action against his employer, American General Life and Accident Insurance Company, also known as American General Insurance Company (AGLA), pursuant to the Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* (WPCL), for wages and benefits allegedly due under his employment contract. In addition to the wages and benefits, plaintiff seeks liquidated damages and attorney's fees. AGLA now moves for summary judgment, contending that plaintiff is not entitled to the claimed wages or benefits under the terms of the employment contract, and is therefore not entitled to liquidated damages or attorney's fees provided for under the WPCL. Because the record reveals no genuine issue of material fact, defendant's motion for summary judgment is granted.

### I. Background

Plaintiff Stebok was employed by AGLA as an agent or field representative from February 22, 1973 to May 18, 1976, and

from January 3, 1977 to on or about February 9, 1987. On July 13, 1984, plaintiff was presented with a written employment agreement entitled "Field Representative Employment Agreement" (the contract or employment contract) and was told that he must sign the contract or be terminated. Plaintiff signed the contract.

The contract incorporated by reference a document entitled "Agent's Compensation Plan" (the plan). The plan was designed to provide a weekly compensation not severely impacted by fluctuations in an agent's sales activities. Under the plan, an agent or field representative is compensated for sales, service and persistency of the business assigned to a geographic location. This location is called an agency. The sales, collection and conservation of business in this agency creates certain calculations added to "pools." An agent's weekly compensation is calculated by a stated percentage from these "pools." In effect, the plan required plaintiff to forfeit his commission in return for a regular weekly paycheck.

Plaintiff was terminated on or about February 9, 1987. He made claims to AGLA for the balance of the "pools," his remaining vacation benefits, his security deposit, and his Christmas Club savings. AGLA refused, telling him only that certain deficiencies existed in his accounts and were being offset by the money which he was claiming.

Plaintiff's employment contract contained the following provisions:

*TERMINATION OF COMPENSATION PAYMENTS.* In the event of the field representative's termination of employment with the company of [sic] transfer to employment with the company in a capacity other than as a field representative, or the field representative's death, disability or retirement, the company will have no obligation to pay any compensation provided for in this agreement, or provided for in any compensation plan incorporated herein by reference, after the last week during which the field representative was employed under this agreement. None of the commissions or other compensation payments provided for in this agreement, or in any compensation plan incorporated herein by reference, will be vested. Any commissions or amounts credited to pools under any compensation plan incorporated in this agreement by reference which are unpaid at the time of termination of employment under this agreement will be forfeitted to the company in consideration of the payment to the field representative of initial weekly compensation, the establishment of the initial pools amount, and the training and financing received by the field representative when first employed under this agreement.

*PAYMENT OF ACCOUNT DEFICIENCIES.* In the event an audit reveals a deficiency in the accounts of the field representative with the company during the course of employment under this agreement, or upon termination of such employment, the field representative will immediately pay to the company the amount of said deficiency.

*OFFSETS.* Upon the termination of employment of the field representative, the company may apply any amount due and payable from the company to the field representative under this agreement, and any compensation plan incorporated herein by reference to the payment of any indebtedness owed by the field representative to the company.

(Affidavit of James H. Crowell, Jr., Exhibit A.)

On October 1, 1987, plaintiff filed this action in the Court of Common Pleas of Fayette County. Defendant removed the case to this Court and subsequently filed a motion for summary judgment.

## II. Summary judgment

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact ... and the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The substantive law will determine which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202 (1986). A genuine dispute about a material fact arises when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 251, 106 S.Ct. at 2511.

The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact, regardless of which party would have the burden of proof at trial. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). If, however, the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the non-moving party has failed to provide evidence sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must view the facts and the evidence in the light most favorable to the non-moving party. *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir.1987).

### III. Plaintiff's claim for deprivation of earned commissions

#### A. Validity of contract provisions under the WPCL

■ Defendant moves for summary judgment on plaintiff's claim for the balance of the "pools," contending that the provisions of the employment contract unambiguously state that plaintiff is not entitled to any commissions or amounts credited to "pools" which are unpaid at the time of termination of employment. Plaintiff argues that both the retention of commissions and the forfeiture of "pool" balances provisions are attempts to circumvent the WPCL and should be declared void and unenforceable.

Section 260.5(a) of the WPCL provides: Whenever an employer separates an employe from the payroll, or whenever an employe quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable.

Plaintiff argues that since the WPCL requires the payment of all "wages or compensation earned," he is entitled to the balance of the "pools" since he earned the commissions which make up the "pools." The WPCL creates a statutory remedy for an employer's breach of its contract duty to pay wages or commissions earned, but it is the employment contract which governs whether certain wages or commissions are "earned." *Sendi v. NCR Comten, Inc.,* 619 F.Supp. 1577, 1579 (E.D.Pa.1985), *aff'd. without opinion,* 800 F.2d 1138 (3d Cir. 1986). The employment contract to which plaintiff and AGLA entered states that the commissions will not be vested. The contract also provides that employees forfeit all commissions not paid at time of termination. These two provisions clearly indicate that plaintiff never "earned" the commissions for the purpose of the WPCL, but "earned" only a weekly compensation, of which he was paid.

■ Plaintiff argues that the contract's and the plan's provisions contravene public policy. The Court in *Sendi* upheld a plan containing a provision governing when commissions are earned and a forfeiture provision similar to the forfeiture provision in the present case. *Id.* at 1580. The plaintiff in *Sendi* argued that the provision rendering 50 percent of his commission "not earned until paid" by the customer contravened public policy. The Court disagreed, stating that "[s]ince the WPCL does not purport to outline what compensation is due in any particular case, a contractual restriction on when commissions are earned does not frustrate the statute's purpose." *Id.* Likewise, AGLA's retention of commissions and forfeiture of "pool" balances provisions do not frustrate the WPCL's purpose since plaintiff was receiving the wages he earned as calculated by the terms of the contract and the plan.

#### B. Contract of adhesion

■ Plaintiff argues that even if the contested provisions are valid under the WPCL, this Court should not enforce them

because the contract was an adhesion contract. Specifically, plaintiff claims that he was told that he must sign the contract or be terminated. Adhesion contracts involve two parties of unequal bargaining power wherein the dominant party makes an offer to the weaker party on a "take it or leave it" basis. *Brokers Title Co. v. St. Paul F. & M. Insurance Co.*, 610 F.2d 1174, 1179 (3d Cir.1979). Such contracts usually arise in the insurance context where the insurer, knowing that the client would not accept certain terms, "employs the practices of minute print, unintelligible legalese, or high pressure sales technique." *Id.* at 1180.

Plaintiff does not contend that he was hoodwinked into signing the employment contract, the terms of which he did not understand. At the time plaintiff signed the employment contract, he was not an insurance applicant unfamiliar with insurance language, but was an experienced insurance agent familiar with industry language and compensation practices. Plaintiff alleges only that he was required to sign the contract as a condition of continuing employment. Merely alleging that one entered into an agreement which he would not have entered if his financial circumstances were more secure does not render a contract unenforceable. *Harrison v. Fred S. James, P.A., Inc.*, 558 F.Supp. 438, 443 (E.D.Pa.1983). Nor is an allegation of unequal bargaining power sufficient, by itself, to render a contract invalid. *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F.Supp. 807, 811 (E.D.Pa.1981), *aff'd.*, 676 F.2d 688 (3d Cir.1982); *Witmer v. Exxon Corp.*, 495 Pa. 540, 434 A.2d 1222, 1228 (1981).

■ To invalidate a contract, plaintiff must allege both a lack of meaningful choice about whether to accept the provision in question, and that the disputed provisions were so one-sided as to be oppressive. *Stanley A. Klopp, Inc.*, 510 F.Supp. at 810; *Koval v. Liberty Mutual Insurance Co.*, 366 Pa.Super. 415, 531 A.2d 487,

491 (1987). Plaintiff has failed to allege or produce any evidence that the new method for calculating his wages unreasonably favored his employer. Under the new contract, plaintiff was required to forfeit his commissions to the company in return for a weekly compensation not severely impacted by fluctuations in plaintiff's sales activities.[1] While this was not the typical method of compensating insurance agents, this practice does not appear to unfairly benefit AGLA. Defendant is, therefore, entitled to summary judgment on plaintiff's claim that he was deprived of earned commissions.

## IV. Plaintiff's claim for deprivation of benefits

Defendant also moves for summary judgment as to plaintiff's claim for his agent's security bond, Christmas Club savings, and terminal vacation pay which AGLA owed him at the time of termination. While defendant concedes that it did indeed owe plaintiff the claimed amounts, defendant contends that after an audit of plaintiff's account revealed a deficiency, pursuant to the terms of the employment contract, defendant applied the claimed amounts to offset plaintiff's deficiency. Defendant further contends that the net deficiency, after applying the credits is $117.12.

Plaintiff does not deny that the employment contract entitles defendant to offset any deficiencies in an agent's account with money owed to that agent by AGLA. Plaintiff alleges only that he is not aware of the amount, type and source of the deficiencies. This information has been provided to plaintiff by an exhibit to defendant's answers to interrogatories. Since plaintiff has not denied causing the specific deficiencies, there is no genuine issue of material fact. Defendant is, therefore, entitled to summary judgment on plaintiff's claim that he was deprived of his security, his Christmas Club savings, and his vacation pay.

---

1. Plaintiff also argues that the contract lacks consideration. That claim is without merit since both parties received some benefit and suffered some detriment by entering into the alternative method of calculating plaintiff's wages. *Bullock v. Sterling Drug*, 93 F.Supp. 371, 375 (E.D.Pa.1950), *aff'd.*, 187 F.2d 145 (3d Cir. 1951).

### V. Plaintiff's claim for liquidated damages and attorney's fees

In Count II of his complaint, plaintiff claims liquidated damages under § 260.10 of the WPCL. In Count III of his complaint, plaintiff claims attorney's fees under § 260.9a(f) of the WPCL. Since the Court finds that defendant did not withhold wages due the plaintiff and that defendant withheld payment of the benefits claimed as a setoff of plaintiff's deficiencies, plaintiff is not entitled to either liquidated damages or attorney's fees under the above mentioned sections of the WPCL.

### VI. Conclusion

This Court having granted defendant's motion for summary judgment as to all of plaintiff's claims, all that remains in this action are defendant's counterclaims. The amount claimed in defendants' counterclaims, as set forth in their second amended pretrial statement, totals less than $10,-000, the jurisdictional amount in controversy requirement. Therefore, this case will be remanded to the Court of Common Pleas of Fayette County, Pennsylvania. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988).

An appropriate Order will be issued.