**Kimberly A. ZAK, Appellant,**

v.

**PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 26, 1998.

Filed June 8, 1998.

John R. Lenahan, Jr., Scranton, for appellant.

Timothy E. Foley, Scranton, for appellee.

Before FORD ELLIOTT, JOYCE and HESTER, JJ.

HESTER, Judge:

Kimberly A. Zak appeals from the judgment entered against her after the trial court denied her petition to vacate an arbitration award entered in favor of appellee, Prudential Property & Casualty Insurance Company, and granted appellee's petition to confirm the award. We agree with appellant's contention that a clause in the relevant insurance policy is void. That clause grants the insurer the right to a trial when any type of substantial arbitration award is made in favor of the claimant while, at the same time, it provides that if the arbitration award is between zero and $15,000, the award is binding on the claimant. We also conclude that the arbitrators' failure to consider the testimony of an expert witness deprived appellant of a hearing and entitles her to have the award vacated under the relevant standard of review. Since we have awarded appellant another hearing, we need not consider the merits of appellant's third issue, which is that the arbitrators erred in failing to consider evidence of medical bills incurred by appellant. Finally, we do not agree with appellant's contention that she is entitled to a trial on her claims. Rather, we remand for another arbitration hearing.

On May 21, 1992, appellant was a passenger in a car being driven by William Tonkin. Mr. Tonkin's car was struck from the rear by a vehicle that was propelled into it when struck in the rear by a second car, which, in turn, had been struck by another car. In the collision, appellant sustained shoulder injuries. Appellant instituted an action against the operator of the vehicle responsible for the accident, and that action was settled for less than the tortfeasor's applicable insurance limits, $100,000. Appellant then made a claim against appellee, Mr. Tonkin's underinsured motorist carrier, claiming that damages from her injuries exceeded $100,000. Appellee was given credit for the tortfeasor's policy limits, and the parties proceeded to arbitrate whether damages from appellant's injuries sustained in the automobile accident exceeded the policy limits of the tortfeasor's policy, entitling her to underinsured motorist benefits under Mr. Tonkin's policy.

Liability was not questioned; however, damages were contested. After the accident, appellant had surgery on and continuing pain associated with her right shoulder. These problems affected her ability to work and enjoy life. Appellant maintained that injuries she sustained in the accident necessitated the surgery and caused her continuing shoulder pain. Appellee countered that the surgery and pain stem from a pre-existing condition unrelated to the accident.

After taking testimony and considering the parties' briefs, two of the three arbitrators issued an award in favor of appellee, concluding that the value of appellant's claim did not exceed the $100,000 credit appellee received from the action against the tortfeasor. In the award, the arbitrators expressly state that "in arriving at the ... award, a majority of the arbitrators sustained the Defendant's objections and did not consider evidence of the Plaintiff's economic damages, specifically, any medical bills or vocational testimony offered by the Plaintiff." Reproduced record ("R.R.") at 22a–23a. Appellant filed a petition to vacate the award, which was denied. Appellee then filed a petition to confirm the award, which was granted. This appeal followed entry of judgment against appellant.

Appellant raises three contentions for our review. First, she alleges that one of the clauses in the insurance policy is void as a matter of public policy and that as a result, she is entitled to proceed to trial on her claim. Next, she argues that the arbitrators erred in failing to consider both her medical bills and the testimony of her vocational expert. As to these latter two errors, appellant argues that the panel's failure to consider those items of damages denied her a hearing. We conclude that we can review two of three of appellant's claims. We also agree that the arbitrators' refusal to consider the testimony of the vocational expert, which was competent and proper, denied her a hearing and warrants reversal. However, we do not agree that appellant is entitled to a trial on the issues. Rather, we conclude that parties must proceed to another arbitration. We do not consider the issue of whether the arbitrators erred in failing to consider appellant's medical bills due to 75 Pa.C.S. § 1722 since

that issue is rendered moot by our decision to award another arbitration hearing.

We first examine our standard of review with respect to the first issue. The parties both acknowledge that we have the right to review that issue, which is whether a clause in the policy is void as a matter of public policy. *See Hall v. Amica Mutual Insurance Co.*, 538 Pa. 337, 648 A.2d 755 (1994); *see also Caron v. Reliance Insurance Co.*, 703 A.2d 63 (Pa.Super.1997). Appellant contends that she is entitled to a trial on her underinsured motorist claim due to that fact that the following clause in the applicable insurance policy is void as a matter of public policy.

A decision agreed to by two arbitrators will be binding if the award does not exceed the limits required under the Financial Responsibility Law of Pennsylvania.

If an arbitration award exceeds these limits, either party has a right to trial on all issues in a court of competent jurisdiction. This right must be exercised within thirty days of the award. Each party will pay their own expenses.

█ The effect of this clause is clear.[1] An arbitration award is binding if it is less than $15,000. However, if the award exceeds $15,000, either party may appeal and obtain a trial on all issues. Herein, the award was zero so appellant did not have the right to a trial even though appellee would have been entitled to a trial if appellant would have received a substantial award, *viz.*, one over $15,000.

Our Supreme Court has explained the circumstances under which we may determine whether public policy is violated by a particular insurance clause:

---

1. Appellee suggests that this issue is waived due to appellant's failure to present it to the arbitration panel. *See* Appellee's brief at 9. However, the clause had no effect until the arbitration award was entered, and therefore, whether the clause was void as against public policy was not relevant to the arbitration proceeding. Since the clause became operational once the arbitration award was entered, the validity of the clause properly was raised in the first instance at the trial court level.

We also disagree with appellant's related contention that the clause is not involved in this case

and that, therefore, we may not consider its validity. Appellant received a zero award. Thus, under the clause, she was not entitled to a trial on all issues, and the arbitration award became "binding." Whereas, if appellant had received a substantial award, appellee could have obtained a trial under the clause. Thus, the clause did come into play in this case because it limited appellant's right to appeal from the award while it would have expanded appellee's rights if an appropriate award had been entered.

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy ...

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal ... Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.

*Hall v. Amica Mutual Insurance Co., supra,* 648 A.2d at 760, *see also Eichelman v. Nationwide Insurance Co.,* 711 A.2d 1006 (1998); *Caron v. Reliance Insurance Co., supra.*

■ In this case, the clause is completely unconscionable. It allows the insurer to obtain a trial when the claimant or insured obtains an arbitration award of any significant amount but binds the claimant or insured to the amount of the arbitration award when the claimant or insured is awarded nothing or a miniscule amount. Appellee suggests that the clause is fair because "either party" can appeal if the award is over $15,000. This suggestion ignores the reality of the *effect* of the clause. It allows the insurance company the unfettered right to a trial whenever an award is made in favor of a claimant or insured while a losing claimant or insured is bound by his award. The clause so clearly favors the insurer over the claimant or insured that it is repugnant to notions of due process, equal protection, justice, and fair play.

■ The test of whether a clause in an insurance contract is unconscionable is twofold: "First, one of the parties to the contract must have lacked a 'meaningful choice' about whether to accept the provision in

question. Second, the challenged provision must 'unreasonably favor' the other party to the contract." *Koval v. Liberty Mutual Insurance Co.,* 366 Pa.Super. 415, 531 A.2d 487, 491 (1987). Both conditions are met in this case. Insurance contracts, which are promulgated by the insurer and which have terms not subject to negotiation, generally are considered contracts of adhesion. *See Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Furthermore, this clause, as discussed above, clearly unreasonably favors the insurer.

We find reasoning employed in *Hall v. Amica Mutual Insurance Co., supra,* instructive herein. In that case, the claimant argued that the courts could not review the arbitrators' decision that a clause was void as against public policy even though the courts could review a decision that a clause was not void. The Supreme Court stated such an argument was repugnant to logic, due process, and equal protection. The same reasoning is implicated in this case. It is fundamentally unfair for an insurer to obtain a trial any time an award it does not like is made while the claimant or insured is not afforded a similar right. The procedure offends notions of due process and equal protection.

We also agree with appellant that the clause implicates a provision of the Unfair Insurance Practices Act, 40 P.S. §§ 1171.1, *et seq.* Section 1171.5(10)(xi) of that act provides that the following, if committed with such frequency as to indicate a business practice, constitutes an unfair claim settlement or compromise practice: "Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants to induce or compel them to accept settlements or compromises less than the amount awarded in arbitration."

By including the relevant clause in their policies, appellee has created a standardized threat. Any time a claimant or insured obtains any type of substantial arbitration award, he is faced with re-litigating all the issues at a trial. If a claimant or insured obtains no award or a small one, he can do

nothing. The clause can be used to intimidate claimants and insureds into accepting less than the amount awarded in arbitration by confronting them with a possible trial. Based on the foregoing, we find the clause void as against public policy. *See Daley–Sand v. West American Insurance Co.*, 387 Pa.Super. 630, 564 A.2d 965 (1989).

■ While we hold that the clause is void as against public policy, we do not agree with appellant's interpretation of the effect of that holding. Appellant suggests that the clause modified her appeal rights, and the limitations on her appeal rights inherent in the clause should be struck down. She maintains that by altering its appeal rights and granting an appeal when an award is high, appellee altered her appeal rights, allowing her to go to trial when an award is low. We disagree.

Declaring this clause void does not have the effect of voiding the provision calling for the parties to arbitrate disputes, which is entirely separate and distinct. By striking the clause, we make both parties subject to the same procedures. Thus, our holding has the effect of denying the insurer the right to a trial on all issues if an award is entered in favor of a claimant or insured. The parties however remain subject to the agreement to arbitrate, which is a separate clause and not against public policy. The effect of our holding is to make an arbitration award equally binding on both parties.

■ We now address appellant's allegation that the panel erred in excluding from evidence the opinion of one of her expert witnesses, vocational rehabilitation consultant Mark Lukas. Mr. Lukas indicated that appellant could work only one-half time due to her shoulder injuries. We first must determine whether we can review the merits of this issue under the applicable standard of review. The parties agree that the insurance policy at issue provided for arbitration but did not provide for statutory arbitration and that, therefore, the relevant standard of review is found in 42 Pa.C.S. § 7341. *See Prudential Property & Casualty Insurance Co. v. Stein*, 453 Pa.Super. 227, 683 A.2d 683 (1996). That section provides that an award of common law arbitrators may not be vacated or modified "unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award."

Appellant contends that the arbitrators' refusal to consider the testimony of her vocational expert resulted in denial of a hearing and is reviewable under *Smaligo v. Fireman's Fund Insurance Co.*, 432 Pa. 133, 247 A.2d 577 (1968). We agree that *Smaligo* permits review of this issue.

In that case, parents brought the action under the uninsured motorist clause of their insurance policy after their daughter was struck and killed by a hit-and-run driver. They asked for a recess during the arbitration hearing to obtain the testimony of an expert witness as to the future work expectancy of insureds' decedent. The daughter had not worked for a number of years due to a mental condition. The arbitrator refused to grant a recess, concluding that the expert testimony was "unnecessary" to a resolution of the issues, which included the extent to which the daughter would have had future earnings. Thus, the arbitrator made a legal determination that the testimony was not relevant. This determination must have been premised upon the arbitrator's conclusion that the daughter had no future earning capacity since she had not worked for years. Our Supreme Court held that the correctness of the arbitrator's failure to consider the witness's testimony was reviewable under standard of review applicable to common law arbitrations. The standard of review at that time was identical to the present standard of review.

The Supreme Court noted that there was no evidence, in the absence of the expert's testimony, to support the parents' position that their daughter could have been gainfully employed at some time in the future. It then observed that the parents did proffer medical testimony which was relevant and competent on the determination of loss of future earnings of the decedent. The court concluded that the arbitrator's refusal to hear the testimony on the grounds it was unnecessary was not merely a mistake of law or fact binding

upon the parties and the courts. It ruled that the failure to regard the expert's testimony "of any import resulted in the [parents] being denied a full and fair hearing. That an award is not binding where there has been a denial of a hearing has been clearly stated by this Court on several occasions." *Id.,* 247 A.2d at 580. The court then held that the arbitrator's decision was in error and that the parties should proceed to another arbitration.

We cannot distinguish *Smaglio* from the present one. Herein, appellant claims that the arbitrators' failure to consider competent expert testimony denied her a hearing. It involves a decision that the testimony was infirm. Similarly, in *Smaglio,* the arbitrator decided that the daughter did not have a future earning capacity since she had not worked for years. The arbitrator refused to hear relevant testimony on the subject, deciding it was infirm in that it was not relevant. Our Supreme Court reviewed the decision that the testimony was not relevant. Hence, under *Smaglio* we may review the determination that Mr. Lukas's testimony was not admissible because it was not based on competent medical evidence that appellant's accident-related injuries impacted on her ability to work. *Compare Prudential Property & Casualty Insurance Co. v. Stein, supra* (where arbitrators did not declare a provision of insurer's policy void and where insurer did not establish that it was denied a hearing nor that fraud, misconduct, corruption, or other irregularity caused the entry of an unjust award, insurer's issues were not reviewable).

At the hearings, appellant presented the following evidence. Appellant was a passenger in the rear seat of Mr. Tonkin's vehicle when the accident occurred. She struck her right shoulder against the rear of the seat in front of her. She sustained, among other things, trauma to the right shoulder. She was diagnosed as suffering myofascial pain syndrome and instability of the right shoulder resulting from the accident. As a result of the shoulder injury, appellant underwent surgery at the University of Pennsylvania Hospital on July 7, 1993.

Despite the surgery, appellant's right shoulder remained subject to pain, limited movement, numbness, and tingling into the right hand and fingers. One of appellant's treating physicians diagnosed her with right shoulder instability with recurrent dislocation as a result of the accident. He also indicated that appellant has recurrent tendonitis secondary to the instability. The right shoulder and back injuries affected appellant's ability to work, participate in sports, and care for her child. The surgeon who performed appellant's operation stated that his surgery was performed to correct an accident-related injury.

Appellee presented the following countervailing evidence. The vehicle in which appellant was riding at the time of the accident sustained nominal damage in the amount of $557.03. Appellee was injured when her right shoulder struck the back of the front seat. She was treated at a local hospital and released the next day. A consulting orthopedic doctor, Gerald Gryczko, was consulted at the hospital. Dr. Gryczko indicated that appellant had a bruise on the right shoulder and soft tissue injury. X-rays revealed no fracture or other significant abnormality. Dr. Gryczko also concluded that appellant did not have a separation of the shoulder joint or any instability. Appellant continued to treat with Dr. Gryczko, who ordered an MRI on June 15, 1992. That study revealed that the rotator cuff of appellant's right shoulder was normal except for tendonitis. Dr. Gryczko indicated that appellant's tendonitis was a degenerative condition, which pre-dated the May 21, 1992 accident. He stated that the degenerative condition existed prior May 21, 1992, since the MRI was taken within a month of the accident. Appellant treated with Dr. Gryczko until August 22, 1992.

Appellee's doctor also examined appellant, and he opined that the MRI film was normal with respect to any trauma-related injury and that appellant's surgery was to correct the pre-existing degenerative condition tendonitis and not any trauma-related injury. Appellee also established that appellant bowls an average of four times per week and had done so for a significant period of time. Appellee contended that "the capsular shift

procedure performed by Dr. Glasgow in July, 1993, was not accident-related, but rather was done to correct a chronic rotator cuff problem and tendonitis problem that was degenerative in nature." Reproduced record at 107a.

■ Appellee objected to the arbitrators' consideration of any testimony by appellant's vocational expert, Mr. Lukas. The basis for that objection was that the testimony was "incompetent because *the records upon which Mr. Lukas based his opinion were completely devoid of any medical opinion that Petitioner was restricted in her ability to work.*"[2] R.R. at 95a (emphasis added); *see also* Appellant's brief at 13. Interestingly, in its brief to the arbitration panel, appellee conceded that Mr. Lukas was "competent to give an expert opinion based upon a medical disability or restriction rendered by a physician." R.R. at 95a.

We disagree with appellee's representation of the record. There was clear, concise, and competent medical testimony that appellant's accident-related injuries impacted on her ability to work. Mr. Lukas reviewed and relied upon the deposition of Dr. Kenneth Gentilezza. R.R. at 161a–62a. We now review that deposition.

Dr. Gentilezza noted that prior to the accident, appellant never had experienced any pain or problems with her right shoulder. When appellant initially came to see him in October, 1992, due to right shoulder and back problems, he diagnosed her as follows:

A. Well, I felt that she had diffuse pain in the cervical spine, shoulder and multiple areas increasing over the last several weeks. I had a differential diagnosis based upon those findings and my examination of definite secondary myofascial pain syndrome due to the previous motor-vehicle accident of May 1992, and possible right shoulder instability based upon either a rotator cuff tear, a continuing shoulder separation or possibly a more serious glenohumeral lesion to the right shoulder

due to the previous motor-vehicle accident.

R.R. at 251a. The doctor was asked whether in October, 1992, he had "an opinion based upon a reasonable degree of medical certainty as to whether your diagnoses as you've just described them were conditions in Kimberly Zak that were related to the motor-vehicle accident on May 21, 1992?" *Id.* The doctor responded, "Yes, I did," and, "That they were directly related to that motor-vehicle accident that occurred in 1992." *Id.*

Dr. Gentilezza continued to treat appellant with physical therapy and drugs. She had periods of improvement with her ability to use her right shoulder but nonetheless continued to experience problems. On January 7, 1993, the doctor thought that appellant "continued to have secondary myofascial pain due to the automobile accident, but it was improving. I felt that she still had right shoulder instability due to a shoulder dislocation/separation and that it had been improving." *Id.* at 253a. The next month, he diagnosed her with the same conditions and stated that the shoulder instability was "secondary to her automobile accident." *Id.* at 254a.

Appellant's shoulder separated from its joint one night while she was sleeping, causing her extreme pain. In July, 1993, she underwent the surgery, which resulted in enough improvement for her to resume some normal activities. After the surgery, however, appellant continued to have problems. On November 10, 1994, Dr. Gentilezza diagnosed appellant with "significant bicipital tendonitis." The following exchange occurs in the deposition with respect to this diagnosis:

Q. What is that?

A. Right in this region here. Right where the biceps tendon runs across the shoulder. You see that commonly in individuals who get shoulder surgery. They rely more on the biceps tendon to move the shoulder as opposed to the true shoulder muscles and it gets inflamed.

2. We note that appellant asked the trial court to review the medical evidence, contending that her expert medical witness did testify that her acci-

dent-related injuries affected her ability to work. The trial court refused to do so.

Q. Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether the bicipital tendonitis was related to the motor-vehicle accident or treatment that was related to the motor-vehicle accident?

A. Yes, I do.

Q. What's your opinion?

A. I felt it was definitely related to the treatment that was provided for injuries sustained in the motor-vehicle accident.

*Id.* at 256a. The doctor placed appellant on physical therapy and medication. In March, 1995, Dr. Gentilezza diagnosed appellant with chronic right shoulder instability and acute bicipital tendonitis. As noted above, the doctor already expressly, clearly, and to a reasonable degree of medical certainty, had related all those problems to the traffic accident. He also indicated that the fact that the shoulder instability did not appear on the June, 1992 MRI was not significant because that type of instability does not always appear on a MRI.

Finally, the following exchanges occurred:

Q. Do you have an opinion based upon a reasonable degree of medical certainty as to whether Kimberly Zak has had or will have restrictions on her activities of daily living or employment as a result of the injuries that she sustained in the motor-vehicle accident as you've described them?

A. Yes, definitely she'll have restrictions.

Q. Could you please describe that for us, please?

A. Sure. Of the two she certainly will have less restrictions in her activities of daily living than she will with her employment for the most part or any type of employment. However, she will have difficulties with activities of daily living when you take into consideration what that means. She should do fairly well with dressing; although, there may be times when she tries to put her arm into her sleeve that it will cause pain and discomfort and may even dislocate again. She will have difficulty performing household chores. She will have difficulty reaching into cupboards over her shoulder height. She will have difficulty performing yard work or things that she has to lift. She may have difficulty lifting a child, holding a child in one arm, feeding a child, washing a child, those type of activities. With respect to work, jobs even sedentary for her may cause problems such as a typist, not basically because of her shoulder but because of the myofascial pain that she developed from the accident. Those prolonged repetitive activities, especially ones that don't allow an individual to change positions frequently, commonly aggravate myofascial pain and produce increasing symptoms and impairment as a result of that. Other activities at work, she may not be able to lift at work. She wouldn't be able to work in an assembly line where she has to predominantly use her right arm. There's a whole host of other things that she won't be able to do. Some things she will. Some things she won't. I'd say there's more won'ts than wills.

Q. Doctor, do you have an opinion as to whether Kimberly Zak has sustained permanent injury to her anatomy as a result of the motor-vehicle accident?

A. Yes.

Q. And what, in your opinion, constitutes permanency with regard to her condition?

A. Permanency in exactly her or what defines permanency?

Q. No, I'm sorry. What is permanent in the patient?

A. She does not have a normal capsule of her shoulder, nor does she have a normal glenohumeral joint anymore. She's had an injury sustained to it from the accident plus surgery to repair it, and she does not have a normal joint anymore.

Q. Doctor, is there any chronicity to her conditions related to the accident?

A. Yes.

Q. What is that?

A. Chronic loss of range of motion, dysfunction, ability to use the shoulder, pain; and she has higher risk of developing arthritic problems in that right shoulder than compared to the left.

R.R. at 261a.

Thus, the testimony unquestionably relates all of appellant's current right-shoulder problems to the accident and also unquestionably indicates that those shoulder problems will impact on her ability to work. The physician did not state that the accident-related injuries restricted appellant to "one-half" time work. Appellee appears to believe that the doctor was required to do so to render Mr. Lukas' testimony admissible. We disagree. *It was within the area of expertise of Mark Lukas* to establish the *extent to which* appellant's injuries prevented her from working. Dr. Gentilezza unequivocally stated to a reasonable degree of medical certainty that all of appellant's right shoulder problems stemmed from the accident and that the problems impacted on her ability to work. Dr. Lukas assumed all of *appellant's right shoulder problems stemmed from the accident.* This assumption was based on solid medical testimony of Dr. Gentilezza that they did. Mr. Lukas then testified about *the extent* to which the shoulder problems affected her ability to work. This testimony was clearly within his area of expertise.

The standards applicable to qualification of an expert follow:

It is well established in this Commonwealth that the standard for qualification of an expert witness is a liberal one. *The test to be applied when qualifying an expert witness is whether the witness had any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.* It is also well established that a witness may be qualified to render an expert opinion based on training and experience. Formal education on the subject matter of the testimony is not required, nor is it necessary that an expert be a licensed medical practitioner to testify with respect to organic matters. It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience.

*Erdos v. Bedford Valley Petroleum Co.,* 452 Pa.Super. 555, 682 A.2d 806, 808 (1996) (emphasis in original), *quoting Miller v. Brass Rail Tavern, Inc.,* 541 Pa. 474, 664 A.2d 525, 528 (1995).

Mr. Lukas was a vocational expert and certainly was qualified to render an opinion about the degree to which appellant's shoulder problems have affected her ability to work. Furthermore, there was clear and concise medical testimony linking all of appellant's shoulder problems to the accident. The arbitrators' failure to consider the testimony was incorrect and requires reversal.

Appellant further contends that the arbitration panel erred in ruling that she was not entitled to recover for certain outstanding medical bills. The arbitrators determined that the bills were paid or payable under section 1722 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1722, and therefore, were not recoverable against appellee. However, since we have awarded appellant a new arbitration hearing, it is clear that we need not address this issue as the second arbitration panel will render its own conclusions regarding this claim and may come to a different conclusion regarding the admissibility of those bills. However, the panel may benefit from our recent decision in *Scott v. Erie Insurance Group,* 706 A.2d 357 (Pa.Super.1998), which is relevant to the issue presented by appellant.

Order reversed. Case remanded for arbitration proceedings. Jurisdiction relinquished.

FORD ELLIOTT, J., files a dissenting statement.

FORD ELLIOTT, Judge, dissenting:

I must respectfully dissent because I do not find the challenged contract clause relevant to the arbitration award entered in this case.

As the majority correctly notes, ordinarily common law arbitration awards may only be reviewed where a party clearly shows he did not get a hearing, or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. 42 Pa.C.S.A. § 7341. This court has interpreted § 7341 to allow for review of common law arbitration awards where a provision in an insurance policy is challenged as "contrary to constitutional, legislative or administrative mandate or against public policy or unconscionable." *Caputo v. Allstate Ins. Co.*, 344 Pa.Super. 1, 4, 495 A.2d 959, 961 (1985). In *Caputo*, for example, this court found reviewable a claim by Caputo that the arbitration award denying him stacked insurance coverage, permissible under Pennsylvania law, violated Pennsylvania's public policy favoring compensating victims of uninsured motorists.[1] Thus, I could agree with the majority that the challenged provision is reviewable on public policy grounds *if it affected the arbitration award.*

As the majority correctly notes, however, the contract provision at issue in this case affects the parties' rights to a trial *de novo* if they are not satisfied with the arbitration award.[2] Thus, the arbitrators clearly could not have based their award on the challenged clause. Additionally, by granting a new arbitration hearing, the majority does not provide the insured with any relief from the offending provision. As a result, the majority's determination that the clause violates public policy does not affect the validity of the previously entered arbitration award, nor will it implicate the proceedings at a new arbitration hearing. I therefore respectfully dissent.

---

1. *Caputo* involved a conflict-of-laws issue: the vehicle's owner resided and entered into the insurance contract in New Jersey, which did not allow stacking.

2. The contract provision actually expands both parties' entitlement to review of a common law arbitration award, albeit only under circumstances favoring the insurer.