**Imhoff v. Pep Boys**

2

C.P. of Lancaster County, no. CI-04-07381.

*Thomas A. Dittoe,* for plaintiff.
*Michael L. Banks* and *Michael E. Dash Jr.,* for defendant.

PEREZOUS, *J.,* February 9, 2005—This matter is before the court on the preliminary objections and petition to compel arbitration filed by the defendant, Pep Boys—Manny, Moe and Jack, against the complaint of the plaintiff, Richard Imhoff Jr. Specifically, defendant contends that the plaintiff's complaint should be dismissed because a mutual agreement to arbitrate claims signed by the plaintiff and defendant requires the present claim to be submitted to arbitration. For the reasons that follow, this

court sustains the defendant's preliminary objections, and grants the petition to compel arbitration.

This case arises from events relating to the termination of plaintiff's employment. Plaintiff was employed as a service manager at defendant's store located at 2080 Lincoln Highway East, Lancaster, Pennsylvania. It is alleged that defendant discharged the plaintiff in November 2001, because he had engaged in work-related misconduct. Specifically, he claims that an investigation conducted by the defendant revealed that he failed to pay for work performed on his vehicle, took store inventory for his personal use, and used money taken from the cash register to purchase lunches for himself and others. It is also alleged that the investigation showed that the plaintiff allowed others to engage in similar misconduct. Consequently, it is alleged that this activity resulted in the plaintiff's discharge on November 7, 2001.

On the same day that the plaintiff was informed that his services were no longer required, he received a telephone call from the East Lampeter Township Police Department requesting him to come to the station for questioning regarding Pep Boys. Several weeks after speaking with the police, charges of unlawlul taking and criminal conspiracy were filed against the plaintiff. In March 2003, plaintiff's trial was held in the Court of Common Pleas of Lancaster County. The jury found the plaintiff not guilty of the charges.

On or about August 5, 2004, plaintiff filed a complaint against the defendant in the Court of Common Pleas of Lancaster County. The basis of the complaint is the defendant's alleged malicious prosecution of plaintiff arising out of the investigation conducted by the defen-

dant and the subsequent proceedings against him. After defendant received service of process in this action, its counsel contacted plaintiff's attorney to advise him of the agreement to arbitrate and to request the plaintiff to dismiss the complaint and proceed to arbitration. Defendant was then informed that plaintiff would not agree to proceed to arbitration voluntarily. Subsequently, defendant filed preliminary objections and a petition to compel arbitration as plaintiff and defendant had signed a mutual agreement to arbitrate claims. In response, plaintiff filed an answer to the defendant's preliminary objections and petition to compel arbitration. Both parties filed briefs supporting their respective positions.

When the plaintiff began his final period of employment with the defendant in July 2000, he executed a mutual agreement to arbitrate claims with the defendant. The agreement provides, in pertinent part:

"The company and I mutually consent to the resolution by arbitration of all claims or controversies ('claims'), past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the company may have against me or that I may have against . . . the company." Defendant's exhibit 2(B) at p. 1.

It further states, "[t]he claims covered by this agreement include, but are not limited to . . . tort claims." *Id.* Additionally, the parties agreed "that neither [the plaintiff nor the defendant] shall initiate or prosecute any lawsuit . . . in any way related to any claim covered by this agreement." *Id.* The agreement also acknowledges that the plaintiff "anticipate[d] gaining the benefits of a speedy, impartial, final and binding dispute resolution procedure." *Id.*

The Pennsylvania Rules of Civil Procedure provide that preliminary objections may be filed based upon an agreement for alternative dispute resolution. Pa.R.C.P. 1028(a)(6). The rules also note that "[a]n agreement to arbitrate may be asserted by preliminary objection or by petition to compel arbitration pursuant to the Uniform Arbitration Act, or the common law." *Id.* (citations omitted) Under the Pennsylvania Uniform Arbitration Act, "[a] written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract." 42 Pa.C.S. §7303.

Once a party makes a showing that such an agreement exists and that the opposing party has refused to arbitrate, "the court shall order the parties to proceed with arbitration." 42 Pa.C.S. §7304.[1] Accordingly, the defendant requests that the court order the plaintiff to submit to arbitration pursuant to the agreement.

As a matter of public policy, Pennsylvania courts "strongly favor the settlement of disputes by arbitration."

---

1. In the present case, the written agreement to arbitrate does not expressly refer to the Pennsylvania Uniform Arbitration Act. As such, sections 7303 and 7304 are not directly applicable. See *Midomo Co. Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 153 (Pa. Super. 1999). Nevertheless, sections 7303 and 7304 are applicable through section 7342 of the Act, referring to common-law arbitration. 42 Pa.C.S. §7342(a). Section 7342 provides: "[t]he following provisions of subchapter A (relating to statutory arbitration) shall be applicable to [common-law arbitration]: Section 7303 (relating to validity of agreement to arbitrate). Section 7304 (relating to court proceedings to compel or stay arbitration)." *Id.*

*Smith v. Cumberland Group Ltd.,* 455 Pa. Super. 276, 283, 687 A.2d 1167, 1171 (1997). *E.g., Langston v. National Media Corp.,* 420 Pa. Super. 611, 616, 617 A.2d 354, 356 (1992); *The Children's Hospital of Philadelphia v. American Arbitration Association,* 231 Pa. Super. 230, 234, 331 A.2d 848, 850 (1974). Courts should make every reasonable effort to favor such agreements when parties agree to arbitrate in a clear and unmistakable manner. *E.g., Smith,* 455 Pa. Super. at 283, 687 A.2d at 1171; *Hassler v. Columbia Gas Transmission Corp.,* 318 Pa. Super. 302, 307, 464 A.2d 1354, 1357 (1983). "When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision." *Smith,* 455 Pa. Super. at 283, 687 A.2d at 1171; *Midomo Co. Inc. v. Presbyterian Housing Development Co,* 739 A.2d 180, 186 (Pa. Super. 1999); *Messa v. State Farm Insurance Co.,* 433 Pa. Super. 594, 597, 641 A.2d 1167, 1168 (1994). "If a valid arbitration agreement exists . . . and [the] claim is within the scope of the agreement, the controversy must be submitted to arbitration." *Id.* at 600, 641 A.2d at 1170.

In the present case, a valid agreement to arbitrate exists between the parties. In 2000, plaintiff and defendant entered into an agreement to arbitrate any claims which would arise between them. This agreement can properly be characterized as an adhesion contract. "An adhesion contract is defined as a '[s]tandard form contract prepared by one party, to be signed by the party in a weaker position . . . who has little choice about the terms.'" *Robson v. EMC Insurance Companies,* 785 A.2d 507,

510 (Pa. Super. 2001) (quoting Black's Law Dictionary (7th ed. 1999)). However, a "finding that a contract is one of adhesion does not require that the court find the contract unconscionable." *Lytle v. Citifinancial Services Inc.,* 810 A.2d 643, 658 (Pa. Super. 2002).

As the Superior Court has stated, "[t]he test of 'unconscionability' is two-fold. First, one of the parties . . . must lack a 'meaningful choice' about whether to accept the provision in question. Second, the challenged provision must 'unreasonably favor' the other party to the contract." *Koval v. Liberty Mutual Insurance Co.,* 366 Pa. Super. 415, 423-24, 531 A.2d 487, 491 (1987). Thus, even if it is assumed that one party lacks a meaningful choice in the matter, it still must be determined whether the provision at issue unreasonably favors the other party. See *id.* at 424, 531 A.2d at 491.

Here, the provision at issue does not unreasonably favor the defendant. The plaintiff cites to a provision in the agreement which provides for arbitration of all claims between the plaintiff and the defendant "whether or not arising out of my application of employment, assignment/ employment, or termination of my assignment/employment." Plaintiff's brief at 3. He claims that this provision unreasonably favors the defendant "as it includes claims that are not even related to plaintiff's employment." *Id.* Then, he offers a vague citation to *Lytle* to support his statement.

*Lytle,* however, dealt with "whether an arbitration provision in a consumer contract which reserve[d] a right of access to the courts only for the merchant [was] voidable on the basis of unconscionability." *Lytle,* 810 A.2d at 662. In its decision, the court discussed several other decisions that dealt with the unconscionability of provi-

sions that reserved the drafter's right to proceed in a judicial forum, while, at the same time, prohibiting the other party's access to the courts. *Id.* at 662-64. Those courts found such provisions to be unconscionable. Therefore, *Lytle* held that "under Pennsylvania law, the reservation by the [drafter] of access to the courts for itself to the exclusion of the [other party] creates a presumption of unconscionability." *Id.* at 665.

In his brief, the plaintiff states that the provision in the agreement which calls for the arbitration of claims that are not related to plaintiff's employment, unreasonably favors the defendant. Nevertheless, he fails to support this statement with any persuasive argument or pertinent case law. Unlike *Lytle,* which dealt with the reservation of access to the courts in favor of the drafter to the exclusion of the other party, this agreement calls for both parties to arbitrate any claims which may arise between them. As such, the parties are equally situated under the provisions of the agreement. Consequently, the plaintiff has not persuaded this court that the agreement unreasonably favors the defendant.

It is important to note that in *Zak v. Prudential Property and Casualty Insurance Co.,* 713 A.2d 681 (Pa. Super. 1998), the appellee argued that a clause in an arbitration agreement was fair because either party could appeal an award which exceeded a certain amount. *Id.* at 684. On the face of that agreement, it appeared that both parties possessed equal rights. Nevertheless, the court found that the clause was unconscionable. *Id.* The court recognized the reality of the situation, and stated that "[i]t allows the insurance company [the drafter] the unfettered right to a trial whenever an award is made in

favor of the claimant or insured [the other party] while a losing claimant is bound by his award." *Id.* As a result, the court found that the clause unreasonably favored the other party. *Id.*

Here, the arbitration provision at issue does not present the same threats to due process, equal protection, justice and fair play that were present in *Zak.* It merely calls for the arbitration of any claims which may arise between the plaintiff and defendant, regardless of who institutes the action. No party possesses more rights than the other. As such, this court cannot say that the agreement unreasonably favors the defendant. Therefore, the agreement is valid.

Next, this court must consider if the underlying dispute is within the scope of the provisions of the agreement. As the Superior Court has stated, "when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute." *E.g., Highmark Inc. v. Hospital Service Association of Northeastern Pa.,* 785 A.2d 93, 98 (Pa. Super. 2001); *Midomo,* 739 A.2d at 190. With this standard in mind, then, this court must determine whether plaintiff's claim falls within the scope of the agreement.

The agreement covers all claims that might arise between the parties, with limited exceptions that do not apply in the present case. The plaintiff conceded, as such, in his argument regarding the unconscionability of the agreement. As he argued, "the agreement includes all claims between the plaintiff and defendant 'whether or

not arising out of my . . . employment, or termination of employment.' " Plaintiff's brief at 3. In addition, the express terms of the agreement contemplate "the resolution by arbitration of all claims . . . past, present or future, whether or not arising out of [plaintiff's] . . . employment, or termination of employment." Defendant's exhibit 2(B) at 1. Also, the agreement expressly mentions tort claims as falling within its purview. *Id.*

Nevertheless, plaintiff maintains that the agreement does not apply to his claim. He contends that he was no longer employed by the defendant at the time the initial charges were brought against him. As such, he argues, the agreement is not applicable and he should not be required to submit his claim to arbitration. The agreement, however, expressly provides for the arbitration of any claims, with limited exceptions, that might arise between the parties "following [plaintiff's] . . . employment with the company." *Id.* Furthermore, the agreement states "that those differences may or may not be related to [plaintiff's] . . . employment." *Id.* Therefore, this court cannot say, with positive assurance, that the agreement does not cover the present situation.

Also, it does not appear to this court that plaintiff's malicious prosecution claim relies upon the alleged "post-discharge" conduct of the defendant. In order to be liable under a theory of malicious prosecution, "[t]he defendant must have instituted proceedings against the plaintiff (1) without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249,* 518 Pa. 517, 520-21, 544 A.2d 940, 941 (1988). In the present case, law enforcement

authorities prosecuted the plaintiff after his termination. The conduct alleged on behalf of the defendant, however, took place while he was employed. First, plaintiff claims that defendant conducted an internal investigation that concluded that he had stolen from the defendant. Then, defendant allegedly referred its findings to the authorities while plaintiff was employed by the defendant. Plaintiff specifically alleges, "[o]n that same day [when he was informed his services were no longer needed] plaintiff received a call from the . . . police department to come to the station for questioning." Complaint at ¶¶ 30-32. It can be deduced from these allegations that the defendant provided its findings to the police prior to the plaintiff's termination. Assuming the facts alleged in the complaint to be true, then, the defendant instituted the proceedings against the plaintiff while he still worked for the company. Therefore, the plaintiff's malicious prosecution claim falls within the scope of the agreement.

Accordingly, the court enters the following:

## ORDER

And now, February 9, 2005, upon consideration of the preliminary objections and petition to compel arbitration filed by defendant, Pep Boys—Manny, Moe and Jack, against the complaint of the plaintiff, Richard Imhoff Jr., together with the briefs and supporting papers filed by the parties, it is hereby ordered that the preliminary objections are sustained and the petition to compel arbitration is granted. The plaintiff must arbitrate his claim under the provisions as set forth in the mutual agreement to arbitrate claims.