**John NOVITSKI and Theresa Novitski, Appellee**

v.

**Matthew RUSAK, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2007.

Filed Jan. 4, 2008.

Lauren E. Dobrowalski, Kingston, for appellant.

Matthew A. Cartwright, Plains and Bernard D. Walter, Shavertown, for appellees.

BEFORE: STEVENS, BENDER, and McCAFFERY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment entered in the Court of Common Pleas of Luzerne County in favor of Appellees John and Theresa Novitski in the amount of $443,040.14. Appellant Matthew Rusak contends the trial court should have granted Appellant a new trial, molded the verdict, or granted remittitur on the basis the trial court erred in admitting expert testimony regarding loss of future earning capacity since there was no proper foundation for the testimony. We affirm.

¶ 2 The relevant facts and procedural history are as follows: On August 19, 2002, at approximately 5:45 p.m., Appellant's vehicle improperly turned directly into the path of a vehicle being driven by Mr. Novitski, who suffered injury as a result thereof. Appellees filed a complaint alleging Appellant was negligent and seeking various damages, including those for loss of future earning capacity.[1] Prior to trial, Appellant stipulated to his negligence and filed a motion *in limine* seeking to preclude the expert testimony of Mark Lukas, Ph.D., who was qualified as an expert in vocational rehabilitation, and Mr. Andrew Verzilli, who was qualified as an expert in the field of economic losses, as it related to Mr. Novitski's claim for loss of future earning capacity. The trial court denied the motion, and on November 13, 2006, the matter proceeded to a jury trial.[2]

¶ 3 At the trial, Appellees presented the following relevant evidence: As a result of the collision, Mr. Novitski hit his head on the sun visor and his vehicle's air bags deployed. N.T. 11/14/06 at 3–4. The day after the accident, Mr. Novitski was sore, his forehead was swollen, his arm was sore, and his eyes were black and blue. N.T. 11/14/06 at 5. Mr. Novitski was exam-

---

1. Mrs. Novitski sought damages for loss of consortium.

2. Appellant renewed his objection to the experts' testimony at trial. N.T. 11/15/06 at 64.

ined by Dr. Paul Latzko, and he went for an MRI on August 29, 2002. N.T. 11/14/06 at 7. On August 29, 2002, Mr. Novitski was laid off from his job due to downsizing, and he was unemployed from September, 2002, to January, 2003. N.T. 11/14/06 at 7–8, 29. In January of 2003, Mr. Novitski was hired by Lasco Fittings as a service center manager. N.T. 11/14/06 at 10. Mr. Novitski indicated he oversees ten employees, is a "hands-on guy," and needs to do whatever has to be done to ensure the operation works. N.T. 11/14/06 at 10. Mr. Novitski testified to a decrease in his hobbies. N.T. 11/14/06 at 11–13. Mr. Novitski testified he built approximately twenty outdoor decks but was unable to do so after the accident. N.T. 11/14/06 at 20–21. He is also unable to golf. N.T. 11/14/06 at 21.

¶ 4 On cross-examination, Mr. Novitski indicated he schedules his medical appointments for his lunch hour or after work and he continues to work full-time. N.T. 11/14/06 at 30.

¶ 5 On redirect examination, Mr. Novitski testified that Lasco Fittings does not offer any part-time manager positions. N.T. 11/14/06 at 36.

¶ 6 Paul J. Latzko, M.D., who is a family practitioner, testified he examined Mr. Novitski on August 20, 2002, and diagnosed him as suffering from a cervical strain. Videotaped Deposition of Paul J. Latzko, M.D., dated 9/7/06 at 10–12. On August 27, 2002, Dr. Latzko again examined Mr. Novitski, who complained of persistent pain in his neck and numbness in his hand. Id. at 13–14. Dr. Latzko sent Mr. Novitski for an MRI, which revealed two herniated discs in Mr. Novitski's neck. Id. at 15–16. Dr. Latzko examined Mr. Novitski in July of 2003, and Mr. Novitski complained of increased pain in his neck and shoulder. Id. at 18–19. Dr. Latzko discovered that, during the past year, Mr. Novitski had weakened strength in his

right arm. Id. at 19. Dr. Latzko ordered another MRI, which was completed on July 19, 2003. Id. at 19–20. Dr. Latzko concluded the disc herniations were more pronounced on the second MRI; that is, during the past eleven months, Mr. Novitski's condition had worsened and the herniated discs were applying more pressure to the spinal cord. Id. at 20, 28.

¶ 7 Dr. Latzko examined Mr. Novitski on August 19, 2003, and in September of 2003, April of 2004, October of 2004, and January of 2005. Mr. Novitski continued to complain of pain and weakened arm strength. Id. at 30–36. When Dr. Latzko examined Mr. Novitski in April of 2005, he indicated he felt discomfort in performing light work around the house. Id. at 39. Mr. Novitski's complaints of pain persisted in March of 2006, and Mr. Novitski indicated he felt frustrated by his pain. Id. at 40. Dr. Latzko testified to a reasonable degree of medical certainty that Mr. Novitski sustained herniated discs as a result of the motor vehicle accident. Id. at 41. Dr. Latzko testified that, following the motor vehicle accident, Mr. Novitski was disabled, unable to work, and remained unemployed until January of 2003 due to the herniated discs. Id. at 42, 51. Dr. Latzko testified that Mr. Novitski will continue to experience pain for the rest of his life and will continue to experience a loss of function. Id. at 42–44.

¶ 8 On cross-examination, Dr. Latzko admitted that he gave Mr. Novitski no work restrictions and never wrote a letter excusing him from work. Id. at 46–50, 55. Dr. Latzko testified he believed Mr. Novitski was unable to work due to his injuries until January of 2003. Id. at 51. Dr. Latzko testified he was unaware that Mr. Novitski had been laid off from his job in August of 2003 and he believed that such was irrelevant to his diagnosis. Id. at 51. Dr. Latzko indicated Mr. Novitski has not

had surgery related to the herniated discs. *Id.* at 55.

¶ 9 Albert D. Janerich, M.D., who is a specialist in physical medicine and rehabilitation, testified he examined Mr. Novitski on December 30, 2003, and concluded that Mr. Novitski was suffering pain from two herniated discs in his neck resulting from the motor vehicle accident. N.T. 11/14/06 at 7–8. Dr. Janerich indicated that Mr. Novitski informed him that he was unable to perform lawn work, golf, and heavy lifting. N.T. 11/14/06 at 10. Dr. Janerich concurred with Dr. Latzko's opinion that the second MRI revealed Mr. Novitski's herniated discs had worsened and were applying more pressure to the spinal cord. N.T. 11/14/06 at 11–12. Dr. Janerich recommended that Mr. Novitski use a cervical pillow, take medication, and avoid activities such as lifting, carrying, pushing, and pulling more than five pounds with his right arm and ten pounds with his left arm. N.T. 11/14/06 at 12–13, 15. He also discouraged repetitive use of his arms below the height of his shoulder. N.T. 11/14/06 at 13.

¶ 10 Dr. Janerich examined Mr. Novitski on October 25, 2006, and discovered that Mr. Novitski's pain had increased, use of his right arm was restricted, and he had muscle spasm in his neck. N.T. 11/14/06 at 13–14. Dr. Janerich opined to a reasonable degree of medical certainty that, as a result of the accident, Mr. Novitski suffered two herniated discs, which were worsening, and a pinched nerve in the right arm. N.T. 11/14/06 at 14. Dr. Janerich opined that Mr. Novitski's prognosis was "guarded" and "[t]he likelihood of him getting better is remote and indeed doubtful...." N.T. 11/14/06 at 15.

¶ 11 On cross-examination, Dr. Janerich indicated that, in a report he drafted in December 2003, he noted that Mr. Novitski had missed no time from his work. N.T. 11/14/06 at 17. He acknowledged that he did not recommend that Mr. Novitski stop working, reduce his work schedule, or restrict the hours in his workday. N.T. 11/14/06 at 17–19, 21. However, Dr. Janerich noted that he gave Mr. Novitski various physical restrictions in 2003 and 2006. N.T. 11/14/06 at 18, 21.

¶ 12 On redirect examination, Dr. Janerich indicated that it would make sense for Mr. Novitski to work a reduced workday but he did not tell him that fact. N.T. 11/14/06 at 23.

¶ 13 Mark Lukas, Ph.D., who is a vocational rehabilitation consultant, testified, without objection, that he is qualified to render an opinion on the effect the motor vehicle accident had on Mr. Novitski's future employability. N.T. 11/15/06 at 27. He reviewed medical records and met with Mr. Novitski in February of 2005 for the purposes of a vocational interview and evaluation. N.T. 11/15/06 at 28. Dr. Lukas indicated Mr. Novitski, who was forty-six years old, described he was laid off from a job in August of 2002 but was reemployed with Lasco Fittings, where his job requires him to stand on his feet, walk in the warehouse, and operate a forklift. N.T. 11/15/06 at 29–30. Mr. Novitski reported that the physical demands of his job were challenging to his neck and shoulder condition, he had to take medication in the afternoon to get through the remainder of the day, and he expressed concern about his ability to continue functioning as a full duty manager. N.T. 11/15/06 at 31. Dr. Lukas specifically testified he reviewed medical records, including those of Drs. O'Leary, Janerich, Murphy, Latzko, and Sedor, and concluded that, although Mr. Novitski had physical restrictions, he was persevering in his job "as best he could." N.T. 11/15/06 at 33, 37. Dr. Lukas opined that Mr. Novitski's best chance to remain in the job market was to reduce his work

schedule to a three quarter time schedule. N.T. 11/15/06 at 34. Dr. Lukas testified an abbreviated schedule was appropriate given the nature of his condition and the fact Mr. Novitski's pain became worse as the work day progressed. N.T. 11/15/06 at 34–35. Dr. Lukas testified that, to a reasonable degree of professional certainty, Mr. Novitski should work three quarter time as opposed to full-time, resulting in a loss of $10,000.00 to $16,000.00 annually. N.T. 11/15/06 at 37–38.

¶ 14 On cross-examination, Dr. Lukas admitted that he found no notation in the medical records indicating Mr. Novitski could not work and he saw no limitations on standing. N.T. 11/15/06 at 44, 49. Dr. Lukas admitted that no medical doctor explicitly indicated that Mr. Novitski should reduce his work schedule by 25%; however, Dr. Lukas indicated the reduction was his expert opinion based on his vocational evaluation, which included a review of the medical records. N.T. 11/15/06 at 50. Dr. Lukas admitted that Mr. Novitski continues to work full-time and has not missed work; however, Dr. Lukas testified that, if the objective is to keep Mr. Novitski in the workforce, then cutting his work hours by 25% would provide the best chance. N.T. 11/15/06 at 51–52. Dr. Lukas opined that the reduced work schedule should start immediately. N.T. 11/15/06 at 52.

¶ 15 Andrew C. Verzilli, who is an economist, testified he reviewed Dr. Lukas' report and took into account his opinion that Mr. Novitski would earn $10,000.00 to $16,400.00 less per year. N.T. 11/15/06 at 62, 65. Mr. Verzilli opined that, based on a 25% future wage loss, Mr. Novitski's loss of future earning capacity would be in the range of $449,000.00 to $1,065,000.00. N.T. 11/15/06 at 79–85.

¶ 16 On cross-examination, Mr. Verzilli admitted that he reviewed no medical reports and relied on the opinions of Dr. Lukas. N.T. 11/15/06 at 90.

¶ 17 Appellant presented the following relevant countervailing evidence. Dr. Robert Thomas O'Leary, who specializes in physical medicine and rehabilitation, testified he initially examined Mr. Novitski on April 28, 2003. Videotaped Deposition of Robert Thomas O'Leary, D.O., dated 9/20/06 at 16. During the examination, Mr. Novitski told Dr. O'Leary about the accident and said he had increasing neck pain. *Id.* at 23. Dr. O'Leary reviewed Mr. Novitski's MRI and observed two herniated discs. *Id.* at 24. Mr. Novitski reported that his right arm pain had improved and informed the doctor that he worked approximately nine hours a day as a customer service manager. *Id.* at 24–25. Regarding physical restrictions, Mr. Novitski told Dr. O'Leary that he watched how he turned his neck and did not lift over shoulder level. *Id.* at 26. Mr. Novitski told Dr. O'Leary that "his main concern besides pain in the right side of his neck was some crepitus or cracking with extreme range of motion rotating left and right." *Id.* at 26. Mr. Novitski reported mild pain, which was aggravated when he turned his neck to the left or to the right and was alleviated with stretching. *Id.* at 27. Dr. O'Leary's physical examination revealed no muscle atrophy and a normal range of motion, although Mr. Novitski complained of pain when he fully rotated his head to the left and right. *Id.* at 29–30. Mr. Novitski complained of tenderness in his right cervical and right neck, although Dr. O'Leary was unable to palpate any trigger points or spasms. *Id.* at 30. Dr. O'Leary found Mr. Novitski's strength and reflexes to be normal. *Id.* at 31–32. Dr. O'Leary opined that, to a reasonable degree of medical certainty, due to the motor vehicle accident, Mr. Novitski sustained a mild ligament sprain/strain of

his cervical spine and he strained his neck, although it resolved by the time Dr. O'Leary examined him. *Id.* at 34–35. He noted that Mr. Novitski also suffered a pinched nerve; however, the injury had healed. *Id.* at 36. Dr. O'Leary acknowledged that Mr. Novitski sustained herniated discs; however, he concluded that his condition was not worsening and Mr. Novitski had reached maximum medical improvement as of the time he examined him. *Id.* at 35–36. Dr. O'Leary opined that the herniated discs were giving Mr. Novitski ongoing pain in his neck and he would recommend Mr. Novitski avoid heavy use of his right arm, particularly over shoulder level. *Id.* at 37–38. Dr. O'Leary opined that Mr. Novitski could continue performing his current job duties since it was of a light-duty nature. *Id.* at 38.

¶ 18 Dr. O'Leary examined Mr. Novitski for a second time on April 26, 2005, and Mr. Novitski reported ongoing pain with his neck and right arm. *Id.* at 39–40. Mr. Novitski reported increased pain from the previous examination but indicated he continued working full-time as a customer service manager. *Id.* at 41. Mr. Novitski's range of motion was decreased with extension and right rotation, with complaints of pain, and he complained of tenderness of the right side of his neck, although Dr. O'Leary was unable to palpate any spasms or trigger points. *Id.* at 41–42. In comparison to the first physical examination performed by Dr. O'Leary, the second physical examination revealed a decreased range of motion in Mr. Novitski's neck. *Id.* at 42. Regarding restrictions, Dr. O'Leary opined that heavy repetitive lifting, particularly over the right shoulder level, would worsen Mr. Novitski's condition. *Id.* at 46.

¶ 19 On cross-examination, Dr. O'Leary opined that the restriction regarding heavy lifting was a permanent impairment. *Id.* at 64. He also opined that the double-level disc herniation sustained by Mr. Novitski was permanent. *Id.* at 66.

¶ 20 At the conclusion of all testimony, the jury returned a verdict of $300,000.00 for non-economic damages, including pain and suffering, and $100,000.00 for future lost earning capacity.[3] Appellees filed a timely motion for delay damages, and Appellant filed a timely post-trial motion arguing, *inter alia*, the trial court erred in admitting the expert testimony of Dr. Lukas and Mr. Verzilli on the issue of future lost earning capacity. Appellant sought a new trial, a molding of the verdict, or remittitur. Following a hearing, by order and opinion entered on February 9, 2007, the trial court denied Appellant's post-trial motion in its entirety. The trial court granted Appellees' motion for delay damages. Appellant filed an appeal to this Court, which was perfected when judgment was entered on April 4, 2007, in favor of Appellees in the amount of $443,040.14.[4]

¶ 21 Appellant contends the trial court erred in permitting Dr. Lukas to opine that, as a result of the injuries sustained in the motor vehicle accident, Mr. Novitski would need to reduce his work schedule to three-quarter time, resulting in a wage loss of twenty-five percent. Appellant contends this expert opinion testimony was improper since there was no competent medical evidence to support the opinion that Mr. Novitski's accident-related injuries impacted on his ability to work. Appellant further contends the trial court erred in permitting Mr. Verzilli to opine

---

**3.** The jury did not award damages for Mrs. Novitski's loss of consortium claim.

**4.** The trial court did not order Appellant to file a Pa.R.A.P.1925(b) statement, and no such statement was filed.

that, based on Dr. Lukas' testimony Mr. Novitski would have a twenty-five percent work reduction, Mr. Novitski would have a future wage loss of between $449,000.00 to $1,065,000.00. Appellant contends Mr. Verzilli's opinion was improper since it was based on Dr. Lukas' improper opinion. After a careful review, we conclude there was competent and concise medical testimony that Mr. Novitski's accident-related injuries impacted on his ability to work, and therefore, Dr. Lukas' and Mr. Verzilli's expert opinion testimony on this subject was properly admitted.[5]

It is well established in this Commonwealth that the standard for qualification of an expert witness is a liberal one. *The test to be applied when qualifying an expert witness is whether the witness had any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.* It is also well established that a witness may be qualified to render an expert opinion based on training and experience. Formal education on the subject matter of the testimony is not required, nor is it necessary that an expert be a licensed medical practitioner to testify with respect to organic matters. It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, only that he possess more knowledge than is other-

wise within the ordinary range of training, knowledge, intelligence, or experience.

*Zak v. Prudential Property & Casualty Ins. Co.*, 713 A.2d 681, 689 (Pa.Super.1998) (quotations omitted) (emphasis in original).

■ ¶ 22 Here, Dr. Lukas was qualified as a vocational expert and certainly was qualified to render an opinion about the degree to which Mr. Novitski's herniated discs and pinched nerve affect his ability to work. Furthermore, we conclude there was clear and concise medical testimony linking all of Mr. Novitski's injuries to the motor vehicle accident and that such medical testimony unquestionably indicates that his injuries will impact on his ability to work. Specifically, Dr. Latzko testified that a second MRI revealed Mr. Novitski's herniated discs were worsening, and he opined that Mr. Novitski will continue to experience pain and loss of function for the rest of his life. Dr. Janerich concurred with Dr. Latzko's opinion that a second MRI revealed that Mr. Novitski's herniated discs were worsening and applying more pressure to the spinal cord. He described several restrictions placed on Mr. Novitski, including the avoidance of activities such as lifting, carrying, pushing, and pulling more than five pounds with his right arm and ten pounds with his left arm. He also discouraged repetitive use of Mr. Novitski's arms below the height of his shoulder and noted that Mr. Novitski was experiencing increased pain and a re-

---

**5.** We note Appellant seeks a new trial, a molding of the verdict, or a remittitur. Our standard of review for granting a new trial is whether there was a clear and palpable abuse of discretion in permitting the expert testimony. *See Walsh v. Kubiak*, 443 Pa.Super. 284, 661 A.2d 416 (1995) (*en banc*). Regarding the molding of a verdict, this Court will do so where there is error and a manifest clear intent on the part of the jury. *See Krock v. Chroust*, 330 Pa.Super. 108, 478 A.2d 1376 (1984). Regarding remittitur, we

review the verdict to determine whether the verdict shocks the sense of justice to suggest the jury was influenced by partiality, prejudice, mistake or corruption. *See Vogelsberger v. Magee–Womens Hospital*, 903 A.2d 540 (Pa.Super.2006). No matter which standard of review is applied in this case, for the reasons discussed *infra*, we conclude no remedy is available since the trial court did not err in permitting Dr. Lukas and Mr. Verzilli to offer the challenged expert testimony.

striction in the use of his right arm. He opined that the possibility of Mr. Novitski getting better was remote. Dr. Janerich testified that it made sense for Mr. Novitski to reduce his workday.[6] Based on the medical testimony regarding Mr. Novitski's declining health status and physical restrictions, along with Mr. Novitski's indication to Dr. Lukas that he was having difficulty getting through the entire work day, Dr. Lukas opined that Mr. Novitski should reduce his work day by 25%. Based on the aforementioned, we conclude Dr. Lukas had a proper foundation for rendering this opinion.

¶ 23 We note that we find unavailing Appellant's suggestion that a physician was required to explicitly state that the accident-related injuries restricted Mr. Novitski to "three quarters time" work. As we held in *Zak, supra,* it is within the vocational expert's expertise to establish the extent to which a plaintiff's injuries prevent him from working. Here, Dr. Lukas assumed all of Mr. Novitski's injuries stemmed from the accident; his injuries were ongoing and, in fact, becoming worse; and physicians had proposed various physical limitations. These assumptions were based on solid medical testimony. Dr. Lukas then testified about the extent to which the injuries affected Mr. Novitski's ability to work. This testimony was clearly within his area of expertise and did not require a physician to state explicitly the amount of time by which Mr. Novitski should reduce his work load.

¶ 24 Having found Dr. Lukas' expert testimony was properly admitted, we find no merit to Appellant's contention that Mr. Verzilli's expert testimony, which was based on Dr. Lukas' expert testimony, was improper. Therefore, we affirm.

¶ 25 Affirmed.

---

**6.** Appellant makes much of the fact Dr. Lukas was not present in the courtroom when Dr. Janerich testified. However, Dr. Lukas testified that he reviewed numerous medical reports, including Dr. Janerich's report, in forming his expert opinions.